Eric M. Fraser, 027241
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012
(602) 640-9000
efraser@omlaw.com

Cara Gagliano (*pro hac vice application to be filed*)
Andrew Crocker (*pro hac vice application to be filed*)
Hannah Zhao (*pro hac vice application to be filed*)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, California 94109
(415) 436-9333
cara@eff.org
andrew@eff.org
zhao@eff.org

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Erik Johnson, | No. |
| Plaintiff, | |
| vs. | **COMPLAINT** <br> (Jury Trial Demanded) |
| Proctorio Inc., | |
| Defendant. | |

### INTRODUCTION

1.  This is a civil action seeking a declaratory judgment of noninfringement under the Copyright Act, 17 U.S.C. §§ 106, 107, as well as injunctive relief and damages for misrepresentation of copyright claims under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f), in order to finally quash a campaign of

harassment designed to undermine important concerns about software used by universities around the United States to monitor student activity.

2. As a consequence of the COVID-19 pandemic, schools and universities have increasingly adopted surveillance software to observe students as they complete assignments and tests electronically. These "proctoring" computer programs, like the Proctorio Software owned by Defendant Proctorio Inc. ("Proctorio"), are ostensibly intended to ensure adherence to assignment rules and to identify potential cheating by relying on surveillance methods such as face detection,[1] eye movement tracking, keyboard and mouse monitoring, and audio and visual recording. Students, teachers, and civil liberties advocates have noted that such software may compromise student privacy and digital security while exacerbating socioeconomic divides in student performance.

3. Plaintiff Erik Johnson, a college student whose university uses the Proctorio surveillance software, is one such critic. After carefully reviewing publicly available information, including portions of Proctorio's software code, Johnson concluded that the Proctorio software code contradicted Proctorio's claims about its software and raised a number of privacy, security, and equity concerns. To inform his classmates and the public, he shared his conclusions on Twitter, a social media website. To help explain his conclusions, Johnson linked to excerpts of the software's code that he had uploaded to the code-sharing websites Pastebin and GitHub. This code was found in files that were automatically saved to Johnson's computer when he installed the software. Johnson's use of the code was a textbook fair use, and obviously lawful under Section 107 of the Copyright Act.

4. Proctorio promptly responded by pressuring Johnson to delete his code analysis. When Johnson resisted, Proctorio turned to the DMCA to force the material's removal. As a result of Proctorio's false claims, Twitter removed several portions of

---

[1] Face detection is a technology that detect faces as well as facial movement and direction within an image or video.

1 Johnson's critical commentary, and Pastebin and GitHub removed the code excerpts
2 Johnson shared to support his assertions.
3     5.    Johnson has made every effort to explain the lawfulness of his conduct to
4 Proctorio, to no avail. To ensure that Proctorio will finally cease its efforts to abuse
5 copyright law to interfere with his speech, Johnson has no choice but to seek a
6 declaration of noninfringement.

## PARTIES, JURISDICTION, AND VENUE

6. Plaintiff Erik Johnson is an individual domiciled in Libertyville, Illinois.

7. On information and belief, Defendant Proctorio is a corporation that maintains a principal place of business in Scottsdale, Arizona.

8. This Court has subject-matter jurisdiction over this claim under the Copyright Act (17 U.S.C. §§ 101 *et seq.*), 28 U.S.C. §§ 1331 and 1338, and the Declaratory Judgment Act (28 U.S.C. § 2291).

9. On information and belief, Proctorio has sufficient contacts with this district, both generally and in connection to the events herein alleged, that it is subject to the exercise of this Court's jurisdiction.

10. Venue is proper in this district under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

### A. Johnson's Speech

11. Erik Johnson is a security researcher and an undergraduate student in computer engineering at Miami University in Oxford, Ohio. Due to the COVID-19 pandemic, Johnson attended all of his classes virtually from his home in Illinois from August 2020 through December 2020. Although he returned to campus in January 2021, Johnson's courses have continued to be conducted almost exclusively online.

12. During this period of remote schooling, some of Johnson's instructors have chosen to administer exams using remote exam proctoring software offered by Proctorio (the "Proctorio Software"). On information and belief, the Proctorio Software

works by using eye tracking, face detection, and computer monitoring to surveil exam-takers and flag allegedly "suspicious" behaviors as possible indications of cheating.

13. Like many other students, Johnson was concerned about the Proctorio Software, including the risks it poses to students' privacy and security. Currently, Johnson is a member of a subcommittee appointed by his university's senate tasked with investigating whether or not the use of remote proctoring services such as Proctorio is in line with his university's values. He is the only undergraduate on this subcommittee comprised mainly of graduate students and university officials.

14. To explore Proctorio's potential harm to students' interests, Johnson examined Proctorio Software files that are automatically downloaded to any computer (including Johnson's) that installs the Proctorio Software: (1) language files, which contain lists of messages that the software is able to display on a computer to the software user ("display messages") in multiple natural (human) languages, including English[2]; and (2) a file written in the computer programming language JavaScript that contained both intentionally scrambled (or "obfuscated") code and non-scrambled plain text.

15. On September 7, 2020, following his investigation of the software code in these files, Johnson published a tweet thread[3] critiquing Proctorio and the Proctorio Software. Annotated screenshots of these tweets are attached as **Exhibit 1**. Among other things, Johnson's tweets identified contradictions between Proctorio's public statements and the actual functionality of the software as indicated by its code; demonstrated the

---

[2] Language files are used to facilitate software use and adaptation in different countries or regions and allows the software to display the appropriate natural language based on location.

[3] Tweets are user-generated content posted to the social media website Twitter. A thread is a group of tweets linked together by the user who posted them so that the tweets appear in chronological order instead of Twitter's default of reverse-chronological order. Because users can choose whether new tweets they post are linked to any of their existing tweet threads, threading allows for discussions longer than the per-tweet character limit and that span some period of time.

invasiveness of the Proctorio Software; illustrated the high level of access that the Proctorio Software has to users' computers; and noted the difficulty of determining the full extent of Proctorio's collection of and access to user data.

16. To illustrate the basis for his conclusions, Johnson included, in three of the September 7 tweets, links to relevant software code that he had excerpted from the language files and uploaded to the website Pastebin.[4] **Exhibit 1** at 1–2.

17. In the first of these tweets, Johnson listed various metrics that the Proctorio Software monitors during exams and apparently uses to determine each exam-taker's "suspicion level." He also linked to a code excerpt of the display messages referencing those same metrics. A printout of that code excerpt is attached as **Exhibit 2**. Among the metrics named in Johnson's tweet and found in the linked code is "eye movement," something Proctorio claims its software does not track.

18. In the second tweet, Johnson discussed how the Proctorio Software compares different exam-takers to one another using these metrics. He also linked to a code excerpt of the display messages for reporting these statistics. A printout of that code is attached as **Exhibit 3**.

19. In the third tweet, Johnson identified various reasons the Proctorio Software may terminate a student's exam, such as interruptions in internet connectivity and plugging in an additional monitor. He also linked to a code excerpt listing the display messages for 20 different bases for exam termination. A printout of that code is attached as **Exhibit 4**.

20. In another of his September 7 tweets within the tweet thread, Johnson reported: "In some cases, you will have to scan your room. At the begining [sic] of the exam, and during if your suspicion level raises. Proctorio compiles the footage into a

---

[4] Pastebin is a website that allows users to upload snippets of text, most often software code, for public viewing. One common use of these "pastes" is to share text referenced in a message that is constrained by character limits, such as the 280-character limit for tweets.

1 street-view like 360 image of your room/house that your professor can access and
2 seemingly proctorio 'agents' too." With the tweet, Johnson included a screenshot of a
3 tutorial video showing where these room scan images can be viewed (the "Video
4 Screenshot"). **Exhibit 1** at 2.

5  21. Over the next week, Johnson continued to post criticisms of Proctorio and
6 the Proctorio Software to the same tweet thread. In one September 11 tweet, Johnson
7 included a Pastebin link to three lines of software code from a JavaScript file that
8 Johnson understood to identify programs blacklisted by Proctorio—*i.e.*, computer
9 programs that cannot be used simultaneously with the Proctorio Software. **Exhibit 1** at
10 6. That code excerpt, a printout of which is attached as **Exhibit 5**, contained only code
11 that was not scrambled in the source file. The purpose of this tweet was to show that
12 Proctorio prevents users from taking steps that could mitigate the intrusiveness of the
13 Proctorio Software, such as using a virtual machine for "sandboxing."[5]

### B. Fair Use

15  22. To the extent that the code excerpts associated with Johnson's September
16 7 and September 11 tweets (collectively, the "Excerpts") and the Video Screenshot
17 contained copyrightable material, Johnson's uses of that material are clear-cut fair
18 uses—no different from quoting a book in a book review.

19  23. The fair use analysis centers on four statutory factors: (1) the purpose and
20 character of the use; (2) the nature of the copyrighted work; (3) the amount and
21 substantiality of the portion used; and (4) the effect of the use on the market for the
22 copyrighted work. These factors are analyzed together in light of the fundamental
23 purposes of copyright.

24  24. The purpose and character of Johnson's uses are noncommercial and
25 educational, serving many, if not all, of the favored purposes identified in the preamble
26 to Section 107 of the Copyright Act. Johnson used the Excerpts and Video Screenshot

---

[5] Sandboxing is a computer-security practice that involves isolating a specific program to prevent it from accessing other programs or system resources.

to report his findings from his investigation of the Proctorio Software and to provide evidence supporting his assertions. The uses are also transformative: they combined the copyrighted material with the expression in Johnson's tweets to add new meaning and serve the new and different purpose of sharing evidence-backed criticism of Proctorio with the public.

25. The nature of the works at issue—Proctorio's software code and tutorial video—also weighs in favor of fair use because they are primarily factual or functional. Moreover, Johnson used the works only for their factual content, not their expressive value.

26. The amount and substantiality of the copyrighted material used also weigh in favor of fair use. Johnson included only those lines of software code that directly supported his tweets. And the Excerpts were a negligible portion—almost certainly less than 0.1%—of the Proctorio Software's code. They also were qualitatively insubstantial: the three language file excerpts contained nothing but message text that would be displayed to someone reviewing exam statistics, and the JavaScript file excerpt contained only a list of blacklisted programs. As to the Video Screenshot, Johnson used a single still frame from the full video to demonstrate the ability of professors using Proctorio, and potentially Proctorio employees, to view 360-degree images of students and their homes.

27. Finally, Johnson's use will not cause market harm—at least not the kind of harm copyright law is designed to remedy. The Excerpts—essentially a list of display messages and types of computer programs—are available to anyone who installs the Proctorio Software and cannot possibly serve as a market substitute for the Proctorio Software. Nor does the Video Screenshot serve as a market substitute for the full tutorial video. And to the extent Johnson's critical uses of the Excerpts may cause Proctorio reputational damage or reduce demand for the Proctorio Software because of what they reveal about it, those are not cognizable market harms under copyright law. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591–92 (1994).

### C. Proctorio's Campaign of Harassment

28. On September 7, soon after tweeting about Proctorio, Johnson received a private Twitter message from Proctorio's CEO, Mike Olsen. Olsen demanded that Johnson take down the Excerpts, claiming that they violated Proctorio's terms of service and "undermine[d] the integrity of the test-taking process." Olsen did not identify any copyright-related basis for his demand. In reply, Johnson explained that the Excerpts came from files accessible to anyone who installs the Proctorio Software, and that he did not believe he had agreed to any terms of service before accessing them. A screenshot of the exchange between Olsen and Johnson is attached as **Exhibit 6**.

29. On September 8, Johnson discovered that his IP address had been banned from accessing Proctorio's website and services. As a result, Johnson was forced to seek special accommodations for taking exams that his professors administered through Proctorio.

30. Based on documents obtained through a records request to Miami University, Johnson is informed and believes that on September 9, a Proctorio representative requested that the university ask Johnson to remove any links to Proctorio materials from his tweets. On information and belief, Proctorio again did not cite any copyright-related basis for its request. The university declined to make any such request of Johnson.

31. On October 19, Johnson received an email from Twitter notifying him that the three September 7 tweets that included Pastebin links had been taken down in response to a notice of copyright infringement lodged by Proctorio. The email provided a copy of the DMCA notice, which was signed by Proctorio's marketing director. **Exhibit 7.** The notice also identified the September 7 tweet that included the Video Screenshot as allegedly infringing, but Twitter did not remove that tweet at that time.

32. After receiving the email from Twitter, Johnson discovered that Pastebin had disabled access to the three Excerpts associated with the removed tweets. A notice that appeared in place of each of those Excerpts stated that access had been disabled by

Pastebin on September 28. On information and belief, the Excerpts were removed by Pastebin in response to a DMCA notice lodged by Proctorio. Johnson did not receive notice of the removal from Pastebin, and the material has not been restored.

33. On October 30, Johnson submitted a counternotice under section 512(g) of the DMCA to Twitter, requesting restoration of his tweets. On November 5, Johnson received an email from Twitter stating that it had found Proctorio's DMCA notices incomplete and had restored Johnson's tweets pending further information from Proctorio.

34. On or around November 11, Johnson uploaded the Excerpts to GitHub, another code-sharing website, and appended updates to the September 7 and 11 tweets that provided links to the reposted code excerpts. Screenshots of the updated tweets are attached as **Exhibit 8**.

35. On November 23, GitHub informed Johnson that it had disabled access to the Excerpts in response to a DMCA notice submitted by Proctorio. In addition to its allegations of copyright infringement, the notice also falsely stated that Johnson had obtained the code through "reverse engineering and unauthorized hacking." **Exhibit 9.** Johnson submitted a counternotice on November 24, and GitHub restored access to his content on or around December 9.

36. On November 29, Johnson discovered that Twitter had once again taken down the three September 7 tweets that were the subject of his October 30 counternotice, without notice to him. In addition, Johnson discovered that Twitter had also removed (1) the Video Screenshot from the fourth September 7 tweet identified in Proctorio's September DMCA notice to Twitter and (2) the September 11 tweet about blacklisted programs, which was not mentioned in the September DMCA notice. Counsel for Proctorio confirmed to Johnson's counsel that Proctorio had submitted a second DMCA notice to Twitter. The Excerpt linked to in the September 11 tweet was also removed by Pastebin, again without sending notice to Johnson.

37. In a November 30 phone call, Johnson's counsel presented Proctorio's counsel with the fair use analysis set forth in paragraphs 22 through 27, *supra*. Proctorio's counsel denied that Johnson's uses were fair, but that denial was premised on multiple misstatements of fact.

38. For example, Proctorio's attorneys repeated the claim from the GitHub notice that the excerpted code could be obtained only by "reverse engineering" and "hacking," which they cited to argue that Johnson's use of the excerpts would harm the market for the Proctorio Software by revealing information (which is not copyrightable) to competitors and exam-takers. On information and belief, Proctorio knew that the excerpted code in fact was contained in unprotected files that could be read by anyone who installed the Proctorio Software (including competitors and exam-takers). *See* **Exhibit 6** (September 7–8 Twitter conversation between Johnson and Proctorio's CEO).

39. Proctorio's counsel also asserted that Johnson had shared the entirety of the Proctorio Software code. On information and belief, Proctorio would have known from even cursory examination of the Excerpts that they represented only a miniscule portion of the software's code.

40. Despite the fact that Johnson linked to the Excerpts in tweets that both directly related to the linked material and were part of a multi-tweet thread wherein he excoriated and exposed Proctorio for what he viewed as shortcomings of the Proctorio Software and misrepresentations by Proctorio, Proctorio nevertheless asserted that the Excerpts were unconnected to any commentary or criticism. On information and belief, Proctorio knew at the time of sending the DMCA notices to Pastebin and GitHub that the Excerpts were in fact uploaded by Johnson specifically to support his critical commentary.

41. Johnson's counsel informed Proctorio's attorneys of all of these inaccuracies. But in subsequent email communications, Proctorio nonetheless continued to assert that Johnson's uses were infringing and did not withdraw its DMCA notices.

42. On December 22, Johnson submitted to Twitter a counternotice requesting restoration of all content associated with the September 7 and 11 tweets. On January 15, 2021, Twitter notified Johnson that it had found Proctorio's DMCA notices to be invalid and had restored the affected tweets and media.

43. As a collateral consequence of Proctorio's improper copyright claims, Johnson was informed by a professor that Johnson's application to work in his university's IT Security department will likely be rejected due to his adversarial legal relationship with the school vendor Proctorio.

## CLAIMS FOR RELIEF

### Count 1
### Declaratory Judgment of Noninfringement

44. Johnson repeats and incorporates herein by reference the allegations in the preceding paragraphs of this complaint.

45. There is a real and actual controversy between Johnson and Proctorio regarding whether Johnson's uses of the Excerpts and the Video Screenshot constitute infringement of a copyright interest lawfully held or administered by Proctorio.

46. Johnson contends that his creation and use of the Excerpts and the Video Screenshot were and are lawful, consistent with the doctrine of fair use, the Copyright Act, and the First Amendment to the United States Constitution, and judicial decisions construing such laws, doctrines, and provisions.

47. Every time that Johnson has linked to excerpts from Proctorio's software code to comment on and criticize the Proctorio Software, Proctorio has exploited the DMCA to undermine Johnson's commentary.

48. Proctorio has refused to withdraw its takedown requests. Pastebin has not restored the material that it took down based on Proctorio's claims of infringement.

49. Proctorio continues to maintain that Johnson's expression is infringing, even in the face of evidence contradicting core assumptions of its legal arguments.

50.  Proctorio's pattern of baseless DMCA notices and its continued refusal to acknowledge Johnson's activity as noninfringing have chilled Johnson from engaging in constitutionally protected speech. Johnson continues to comment on and criticize Proctorio and the Proctorio Software but has not shared materials that support his comments in order to avoid further takedowns and legal threats by Proctorio. He has also refrained from further investigation of the Proctorio Software out of fear that reporting on his findings will elicit more harassment.

51.  Johnson is entitled to a declaration that his use of code excerpts and screenshots to support his commentary does not violate copyright law.

## Count 2

## Misrepresentation Under 17 U.S.C. § 512(f)

52.  Johnson repeats and incorporates herein by reference the allegations in the preceding paragraphs of this complaint.

53.  Johnson's uses of the Excerpts and the Video Screenshot do not infringe any copyright interest held or administered by Proctorio because they are lawful fair uses under 17 U.S.C. § 107.

54.  On information and belief, Proctorio knew that Johnson's use of the Excerpts and the Video Screenshot did not infringe any Proctorio copyright interest when they sent notices of infringement to Twitter, Pastebin, and GitHub under the DMCA.

55.  Proctorio violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that Johnson's use of the Excerpts and the Video Screenshot infringed Proctorio's copyrights.

56.  As a direct and proximate result of Proctorio's actions, Johnson has been injured substantially and irreparably. Such injury includes, without limitation, the time and effort associated with responding to Proctorio's multiple fraudulent infringement notices, as well as harm to his free speech rights under the First Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Johnson requests the following relief against Defendant Proctorio:

1. a declaratory judgment that Johnson's uses of the Excerpts and the Video Screenshot do not infringe any copyright interest held or administered by Proctorio;

2. an order enjoining Proctorio, its agents, servants, employees, successors, and assigns, and all others in concert and privity with Proctorio, from asserting a copyright claim, including the lodging of a notice of infringement with any third party, against Johnson alleging copyright infringement arising out of use of the Excerpts, the Video Screenshot, or any other excerpts of Proctorio Software code or screenshots of Proctorio materials, in connection with commentary or criticism about Proctorio or the Proctorio Software;

3. damages according to proof;

4. attorneys' fees pursuant to 17 U.S.C. § 512(f); other portions of the Copyright Act, including Section 505; on a Private Attorney General basis; or otherwise as allowed by law;

5. Johnson's costs and disbursements; and

6. such other and further relief as the Court shall find just and proper.

Plaintiff hereby requests a jury trial for all issues triable by jury, including without limitation those issues and claims set forth in any amended complaint or consolidated action.

DATED this 21st day of April, 2021.

OSBORN MALEDON, P.A.

By s/ Eric M. Fraser
Eric M. Fraser
2929 North Central Avenue, Ste. 2100
Phoenix, Arizona  85012-2793

ELECTRONIC FRONTIER FOUNDATION
Cara Gagliano
    (*pro hac vice application to be filed*)
Andrew Crocker
    (*pro hac vice application to be filed*)
Hannah Zhao
    (*pro hac vice application to be filed*)
815 Eddy Street
San Francisco, California 94109

Attorneys for Plaintiff