Eric M. Fraser, 027241
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012
(602) 640-9000
efraser@omlaw.com

Cara Gagliano (*pro hac vice*)
Hannah Zhao (*pro hac vice*)
Andrew Crocker (*pro hac vice*)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, California 94109
(415) 436-9333
cara@eff.org
zhao@eff.org
andrew@eff.org

Attorneys for Plaintiff-Counterdefendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Erik Johnson, an individual,<br><br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>Proctorio Inc., a Delaware corporation,<br><br>　　　　　　　　　　　Defendant. | No. CV-21-00691-PHX-DLR<br><br>**OPPOSITION TO MOTION TO STRIKE**<br><br>**(Oral argument requested)** |
| Proctorio Inc., a Delaware corporation,<br><br>　　　　　　　　　　　Counterclaimant,<br><br>vs.<br><br>Erik Johnson, an individual,<br><br>　　　　　　　　　　　Counterdefendant. | |

Proctorio's motion to strike is an attempt to rewrite history to avoid confronting relevant evidence of its bad faith.  As a practical matter, Proctorio's claim is just perplexing: it complains it will be harmed because Johnson states that Proctorio alleged infringement and denied that fair use applies, even while it asserts counterclaims that allege both points. As a legal matter, Proctorio tries to misuse Federal Rule of Evidence 408 by recasting an initial inquiry and exchange of views as a settlement negotiation.

Proctorio's motion should be denied for three independent reasons: First, the Complaint does not contain any material that would be inadmissible under Federal Rule of Evidence 408.  Second, Rule 408 does not govern the contents of pleadings and is not an appropriate basis for a motion to strike under Federal Rule of Civil Procedure 12(f). Finally, Proctorio has not satisfied the standard for striking material under Rule 12(f).

**FACTUAL BACKGROUND**

Between September and November 2020, Proctorio repeatedly submitted DMCA notices falsely accusing Erik Johnson of copyright infringement.  *See* Compl. ¶¶ 31–36. On November 25, 2020, Johnson's counsel emailed the attorney who had signed one of those takedown notices under penalty of perjury, Rebecca Weisenberg of Weiss Brown, PLLC.  Declaration of Cara Gagliano in Support of Opposition to Motion to Strike ¶ 3 & Ex. A.  Johnson's counsel requested a phone call with Ms. Weisenberg to discuss "the basis for your client's allegations, including the basis for your determination that fair use doctrine does not bar your client's infringement claim."[1]  *Id.*  This request had two purposes.  The first was to determine whether Proctorio had, as the law requires, conducted a fair use analysis and formed a good faith belief that the content at issue was infringing before submitting the DMCA notice.  *Id.* at ¶ 6.  The second was to put

---

[1] The Declaration of Heather Horrocks implies that the emailed request was addressed to Ms. Horrocks.  Horrocks Decl. ¶¶ 7–8 ("Johnson's counsel contacted me . . . . Johnson's counsel requested that I, as Proctorio's counsel, speak with her . . . ."). In fact, the request was addressed to Ms. Weisenberg, as the person who certified the notice to GitHub, and Ms. Horrocks responded on her behalf.  Gagliano Decl. ¶ 3 & Ex. A.

2

Proctorio on notice that Johnson was making fair use of the allegedly infringed material and correct any factual errors underlying Proctorio's claims. *Id.* at ¶ 7. Counsel's email made no mention of settlement or compromise, nor did any of the subsequent emails scheduling the call. *Id.* at ¶ 4 & Ex. A.

On November 30, counsel for both parties spoke over the phone. *Id.* at ¶ 8. Johnson's counsel explained why Johnson's uses were fair and asked about the basis for Proctorio's contrary determination. *Id.* at ¶ 8. Proctorio's counsel presented a fair use analysis that depended on multiple factual and legal errors, which Johnson's counsel identified. *Id.* After correcting these errors, Johnson's counsel asked whether, in light of this information, Proctorio stood by its analysis or would be withdrawing its DMCA notices. *Id.* Johnson's counsel also asked for clarification on whether Proctorio had submitted a second DMCA notice to Twitter. *Id.* Neither party made or invited a settlement offer, nor did the parties engage in any form of compromise negotiations. *Id.* The first mention of settlement or compromise by either party came on December 9, when Proctorio's counsel sent an email stating that Proctorio maintained its position regarding infringement but was willing to withdraw certain of its claims if Johnson would agree to certain conditions. *Id.* at ¶ 9; Horrocks Decl. Ex. A.

Based on these communications and other evidence, Johnson's counsel concluded that there was a live controversy regarding the legal status of Johnson's fair uses and that Proctorio had submitted DMCA notices in bad faith. Gagliano Decl. at ¶ 10. Johnson then filed this litigation. To help establish that Proctorio lacked a good faith basis for its DMCA notices, Johnson included allegations in the Complaint regarding statements made by Proctorio's counsel on the November 30 call, which was not a compromise negotiation and took place over a week before the first mention of any possibility of settlement. Compl. ¶¶ 37–40. To help demonstrate the existence of a live controversy meriting declaratory relief, Johnson also included reference to Proctorio's subsequent assertions of infringement. Compl. ¶ 41.

# ARGUMENT

## I. All Allegations in the Complaint Would Be Admissible As Evidence Under Rule 408.

Rule 408 does not make inadmissible all pre-litigation communication between parties. Rather, it restricts the admissibility only of certain statements relating to attempts at compromise, and only when offered for certain purposes. To rely on Rule 408, Proctorio has the burden of establishing both (1) that the challenged material was part of a compromise offer or negotiation and (2) that the challenged material is being offered to prove liability, to prove damages, or to impeach by a prior inconsistent statement. Fed. R. Evid. 408.

Proctorio has not met that burden. Its motion to strike relies almost entirely on statements that were neither offers of compromise nor made in the context of compromise negotiations. Only one of the statements at issue was even arguably part of an offer of compromise, and that statement—the now-obvious assertion that Proctorio maintains its claims of infringement—is not being offered for a prohibited purpose.

### A. Paragraphs 37–40

The statements alleged in paragraphs 37 through 40 are outside the scope of Rule 408. These statements were made on November 30, over a week before the first mention of the possibility of compromise. Proctorio does not claim that it made or invited a settlement offer on the November 30 call. Moreover, no compromise negotiations took place on that call, and neither party indicated that they intended the call to begin settlement discussions. Given that the prospect of settlement was first raised by Proctorio on December 9, none of the exchanges that occurred prior to that manifestation of intent could constitute "compromise negotiations." Gagliano Decl. ¶ 9.

Simply informing an adverse party of one's legal position, or even attempting to persuade them to unilaterally change their conduct *without offering anything in return*, is not a "compromise negotiation" under any reasonable interpretation of that term and fails to evince the necessary intent to render Rule 408 applicable. *See Craft v. Banner Health*,

2017 WL 11496865, at *10 (D. Ariz. Apr. 12, 2017) (pre-litigation communication between counsel stating position was not protected settlement discussion); *Rodriguez-Garcia v. Municipality of Caguas*, 495 F.3d 1, 12 (1st Cir. 2007) (compromise, by definition, requires mutual concessions). Proctorio cites no case law suggesting otherwise. In fact, Proctorio relies on at least one case that actually refutes its mistaken theory. *See Coogan v. Avnet, Inc.*, 2005 WL 2789311, at *3 (D. Ariz. Oct. 24, 2005). In *Coogan*, the defendants sought to exclude evidence of a meeting in which the plaintiff informed defendant's employee that it believed defendant had made infringing use of a copyrighted work. *Id.* The court declined, finding that "[s]imply informing Fanning of Avnet's copyright infringement falls outside the scope of Rule 408, as it was not part of a settlement negotiation." *Id.* By contrast, the court *did* exclude communications in which plaintiff expressly attempted to negotiate a settlement of the dispute, including by "'offering' to 'accept' 'valuable consideration,' in the form of money and future licensing." *Id.*

Here, the communications at issue are comparable to the former category of evidence in *Coogan*, not the latter. The November 30 call consisted primarily of the parties articulating their respective positions. Neither side ever raised the possibility of "furnishing or offering or promising to furnish . . . valuable consideration in compromising or attempting to compromise a claim" on or before the November 30 call. Fed. Rule Evid. 408. For example, Johnson's counsel never suggested that Johnson would be willing to remove any of the disputed material in exchange for withdrawal of the DMCA notices, nor did Proctorio's counsel solicit such an offer. Gagliano Decl. ¶ 8. *Cf. Wall Data Inc. v. L.A. Cty. Sheriff's Dep't*, 447 F.3d 769, 784 (9th Cir. 2006) (finding account of pre-litigation discussion between parties regarding dispute, without evidence of compromise offer, not covered by Rule 408). Rather, the topic of settlement was first raised in Proctorio's December 9 email. Gagliano Decl. ¶ 9. That Proctorio reiterated much of the same fair use analysis in that email did not retroactively change the nature of

the November 30 statements.[2]  *Cf. Wall Data*, 447 F.3d at 784 (memorandum memorializing communications that took place before settlement negotiations crystallized not covered by Rule 408).

Despite having the burden of establishing Rule 408's applicability, Proctorio does not point to any substance of the November 30 call that could be interpreted as a compromise negotiation, nor any prior indication of intent to discuss a possible compromise.  Proctorio instead relies on conclusory assertions that the call could have had no other purpose and unfounded accusations of bad faith.  For example, the Horrocks Declaration states that Proctorio's counsel believed the call to be a settlement discussion "based on representations made by Johnson's counsel"—but does not say what those alleged representations were.  Horrocks Decl. ¶ 9.  The only representation made by Johnson's counsel about the call was that it was to "discuss the basis for your client's allegations, including the basis for your determination that fair use doctrine does not bar your client's infringement claim." Gagliano Decl. ¶ 3 & Ex. A.  That is not an indication of intent to enter compromise negotiations, and it would not be reasonable to assume otherwise.  *Latorraca v. Centennial Techs. Inc.*, 583 F. Supp. 2d 208, 213 (D. Mass. 2008) (email requesting information without mentioning settlement not covered by Rule 408), *aff'd sub nom. Latorraca v. Taniki Fin. Corp.*, 393 F. App'x 730 (1st Cir. 2010).

As Proctorio acknowledges, a claim under DMCA section 512(f) requires

---

[2] After this litigation began, Proctorio sought to effect such a change by refusing to engage in settlement discussions unless Johnson signed an agreement that would retroactively designate all pre-litigation communications between counsel as confidential settlement communications that could not be used in court for any purpose, along with imposing other terms going beyond Rule 408's scope.  Declaration of Gabriel Ramsey Ex. 1; Gagliano Decl. ¶ 11.  Given Johnson's position that portions of these communications are properly included in the Complaint and not subject to Rule 408, it would make little sense to enter such an agreement.  Johnson's counsel informed Proctorio's counsel of its position and rationale, and expressed a willingness to work with Proctorio to accommodate its concerns if Proctorio had specific sensitive information it believed would aid in settlement. Gagliano Decl. ¶ 11. Proctorio's counsel did not reply to that email.  *Id.*

establishing that the defendant lacked a good faith belief that the disputed material was infringing when it submitted a takedown notice. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153 (9th Cir. 2016); Motion to Strike at 7. To form such a good faith belief, the copyright holder must consider whether fair use may authorize the challenged use. *Lenz*, 815 F.3d at 1153. To investigate whether Proctorio had violated section 512(f), Johnson's counsel contacted the attorney who had submitted one of the takedown notices on Proctorio's behalf and inquired about the basis for the notice, including whether fair use had been considered. Gagliano Decl. ¶¶ 3–6. That is responsible due diligence, not a compromise negotiation or the "baiting" that Proctorio alleges. If such conversations, arising well before any evidence that either party was interested in compromise, were considered within the scope of Rule 408, that would significantly impede fair users' ability to investigate subjective bad faith under section 512(f)—because without discovery, the only way to determine the submitter's state of mind often will be to ask. It would also discourage simple pre-litigation fact-finding, directly thwarting Rule 408's underlying policy goal: preventing unnecessary litigation.

In sum, Proctorio never says that Johnson's counsel described the purpose of the November 30 call as initiating compromise negotiations, never says that anyone mentioned Rule 408 before or during the call, and never says that any potential compromise was discussed on the call—because none of those things happened. Proctorio cannot meet its burden of showing that Rule 408 applies to anything said on the November 30 call.

### B.     Paragraph 41

Johnson does not dispute that the email referenced in paragraph 41 contained a settlement offer within the meaning of Rule 408. However, Proctorio's motion fails to address the other requirement for exclusion under that rule: that the evidence be offered for a prohibited purpose. Here, the fact that Proctorio continued to assert that Johnson's uses were infringing in the December 9 email is not being offered "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement

or a contradiction." Fed. Rule Evid. 408. Rather, Johnson included this allegation to help demonstrate the existence of a live controversy suitable for declaratory judgment. The Ninth Circuit has held that this is a "perfectly acceptable" purpose under Rule 408. *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007) (letter designated as settlement communication admissible to satisfy jurisdictional requirements of action for declaratory relief).

**II.    Rule 408 Does Not Govern the Contents of Pleadings**.

Proctorio's motion also should be denied because Rule 408 governs the admissibility of evidence, not the contents of pleadings. Courts in this district and others have thus declined to grant Rule 12(f) motions that are based on Rule 408. *See, e.g.*, *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, 2010 WL 3034880, at *4 (D. Ariz. Aug. 3, 2010); *Liberty Mut. Ins. Co. v. Sumo-Nan LLC*, 2015 WL 2449480, at *8 (D. Haw. May 20, 2015); *Baroness Small Ests., Inc. v. BJ's Restaurants, Inc.*, 2011 WL 13228020, at *2 (C.D. Cal. Sept. 15, 2011). In *TriQuint*, the court stated that Rule 408 would be "an inappropriate means" to strike paragraphs from a complaint, explaining that "[d]isputes over Rule 408 should be resolved as evidentiary matters with motions *in limine* rather than prematurely in Rule 12(f) motions." *Id.* That principle applies here.

The cases Proctorio cites for the proposition that Rule 408 is a proper basis for a Rule 12(f) motion do not apply. *See* Motion to Strike at 6 (citing *Coogan*, 2005 WL 2789311, at *2–*3; *Ogundele v. Girl Scouts-Arizona Cactus Pine Council, Inc.*, 2011 WL 1770784, at *9 (D. Ariz. May 10, 2011)). *Coogan* did not deal with a motion to strike allegations from a complaint; it concerned a motion to strike portions of a summary judgment motion. 2005 WL 2789311, at *2. Because summary judgment motions must be based on admissible evidence, *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988), this case does not bear on the question here. In *Ogundele*, the plaintiff did not dispute that the challenged exhibits related to compromise negotiations within the scope of Rule 408. 2011 WL 1770784, at *9. Instead, the plaintiff argued only that the exhibits were not offered for a prohibited purpose—but failed to identify the

purpose for which they were being offered.  *Id.*  Here, by contrast, the application of Rule 408 has been meaningfully disputed.  The Court thus should be guided by *TriQuint*'s conclusion that the plaintiff's arguments against Rule 408's applicability militated against resolving the admissibility question at the pleading stage.  2010 WL 3034880, at *4.

### III. The Complaint Does Not Include Immaterial, Impertinent, or Scandalous Matter.

Proctorio's motion finally fails to meet the standard for striking allegations under Rule 12(f) because the challenged allegations are neither immaterial nor prejudicial.  As explained above, Proctorio's state of mind and the information of which it was aware are critical to Johnson's section 512(f) claim.  The statements made by Proctorio's counsel regarding the basis for Proctorio's DMCA notices are relevant to establishing that Proctorio did not have a good faith belief that the targeted uses were infringing at the time the notices were submitted.  These were statements made by counsel at the firm that submitted the most recent takedown notice, less than three weeks after that notice was submitted, in response to questions about their basis for submitting the notice.  Compl. ¶¶ 34 (material not uploaded to GitHub until November 11), 35 (Johnson received DMCA notice November 23); Gagliano Decl. ¶¶ 2–3, 8.  Assuming counsel provided an accurate account of their reasons for signing and submitting a claim of infringement under penalty of perjury, those replies are certainly probative evidence of Proctorio's state of mind at the time of the notice.  The strength of the evidence is a question for a finder of fact; Proctorio's disagreement on the issue is not a basis for striking the allegations from the Complaint.  "A court should not grant a motion to strike 'unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *TriQuint*, 2010 WL 3034880, at *3 (quoting *Colaprico v. Sun Microsystems, Inc.*, 759 F. Supp. 1335, 1339 (N.D. Cal. 1991)).  That is not the case here.

Proctorio's argument that it will be unduly prejudiced if the challenged allegations stand similarly strains common sense.  The statements at issue are not the type of compromise offer or sensitive information that Rule 408 is meant to protect; they merely

state Proctorio's legal positions.  As to paragraph 41, now that Proctorio has filed a counterclaim of copyright infringement, Proctorio cannot seriously argue that it will be prejudiced by an allegation that it "continued to assert that Johnson's uses were infringing and did not withdraw its DMCA notices."  As to paragraphs 37–40, Proctorio may want to make different legal arguments to support its infringement claim now, but that does not mean it would be unfair for a fact-finder to know what Proctorio's reasoning was when the DMCA notices were originally submitted.

## CONCLUSION

Proctorio's motion to strike fails at every step: it does not satisfy the Rule 12(f) standard, its reliance on Rule 408 is not an appropriate basis for a motion to strike, and it does not even establish that Rule 408 applies to the challenged allegations.  For these reasons, Mr. Johnson requests that the Court deny Proctorio's motion.

DATED this 13th day of August, 2021.

OSBORN MALEDON, P.A.


By  s/ Eric M. Fraser
    Eric M. Fraser
    2929 North Central Avenue, Ste. 2100
    Phoenix, Arizona  85012-2793

ELECTRONIC FRONTIER FOUNDATION
Cara Gagliano (*pro hac vice*)
Hannah Zhao (*pro hac vice*)
Andrew Crocker (*pro hac vice*)
815 Eddy Street
San Francisco, California 94109

Attorneys for Plaintiff-Counterdefendant