Justin D. Kingsolver (AZ Bar No. 035476)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2500
Email: JKingsolver@crowell.com

Gabriel M. Ramsey (CA Bar No. 209218)*
Kristin Madigan (CA Bar No. 233436)*
Kayvan M. Ghaffari (CA Bar No. 299152)*
Jacob Canter (CA Bar No. 324330)*
**CROWELL & MORING LLP**
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Email: GRamsey@crowell.com

*Admitted pro hac vice*

*Attorneys for Defendant Proctorio, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Erik Johnson, an individual,<br><br>　　　　Plaintiff,<br>v.<br><br>Proctorio, Inc., a Delaware corporation,<br><br>　　　　Defendant.<br>_____<br>Proctorio, Inc., a Delaware corporation,<br><br>　　　　Counterclaimant,<br>v.<br><br>Erik Johnson, an individual,<br><br>　　　　Counterdefendant. | Case No. 2:21-cv-00691-DLR<br><br>**PROCTORIO INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF PARAGRAPHS 37-41 OF THE COMPLAINT.** |

Between September 8 and November 25, 2020, Plaintiff Erik Johnson posted about Defendant Proctorio, Inc. ("Proctorio") on his Twitter account over one hundred times. *See, e.g.*, ECF Nos. 13-2, 13-3, and 13-4. In those posts, Plaintiff wrongfully accused

Proctorio of lying to its users about the information it collects, how the information is used, and how the company protects this information from disclosure. *Id*. He publicly called on Proctorio licensees to terminate their contracts with the company, based on these factual misrepresentations. *Id*. And he published the company's sensitive proprietary material, to further these misrepresentations, in violation both of the copyright laws and his contractual commitments, and Proctorio acted to protect its intellectual property by, *inter alia*, filing DMCA and abuse complaints with Twitter, GitHub, and Pastebin. *Id*.

Then, in late November 2020, Plaintiff's lawyers contacted Proctorio's counsel to "discuss the basis for [Proctorio's] DMCA notice, including the basis for [Proctorio's] determination that fair use doctrine did not bar Proctorio's infringement claim." *See* Declaration of Cara Gagliano ("Gagliano Decl."), ECF No. 25-1 at ¶¶ 2-3. Plaintiff's counsel freely admits that "[w]e hoped that if we corrected any such misunderstandings, Proctorio would retract its claims of infringement and declaratory relief would be unnecessary." *Id*. ¶ 7. These are ***textbook*** settlement discussions. *See* Settlement Offer, Black's Law Dictionary (10th ed. 2014) (defining "settlement offer" as "[a]n offer by one party to settle a dispute amicably . . . to avoid or end a lawsuit or other legal action.").[1]

The subjective, unexpressed intent of Plaintiff's counsel may well have been to chitchat about the copyright infringement. *See* Pl.'s Opp'n to Proctorio's Mot. to Strike (hereafter "Opp."), ECF No. 25 at 5 (stating that the purpose of the November 30 phone call was for the parties to "articulat[e] their respective positions."); Gagliano Decl. at ¶¶ 5-8. And it is possible that Plaintiff's counsel subjectively hoped to use the phone call to build a cause of action against Proctorio where Plaintiff otherwise lacked a good faith basis to bring the claim. *See* Opp. at 7 (stating that lawyers for Plaintiff contacted lawyers

---

[1] *See also Coogan v. Avnet, Inc.*, No. CV-04-0621-PHX, 2005 WL 2789311, at *3 (D. Ariz. Oct. 24, 2005) ("The first question under Rule 408 is whether this exchange constitutes evidence of settlement negotiations within the meaning of Rule 408. Plaintiff's own affidavit provides a clear answer to this question. Plaintiff describes his interaction with Maag as 'negotiating over Avnet's unauthorized use of my photography,' one purpose of which was to "settle the infringement that has occurred.' In other words, Plaintiff contacted Maag with the intent to initiate settlement talks stemming from Defendants' violation of Plaintiff's copyright.") (internal citation omitted).

for Proctorio to "investigate whether Proctorio had violated section 512(f) . . . ."); Gagliano Decl. at ¶ 6.

But there is simply no reason to believe that, from Proctorio's perspective, this was the *objective* intent of that correspondence. Lawyers for adverse parties already engaged in a legal dispute do not contact each other to chitchat. And Proctorio's lawyers certainly are not in the business of *helping others* build civil suits against the company. Instead, the only reasonable understanding of this correspondence was that both Plaintiff's lawyers and Proctorio's lawyers wanted to resolve the dispute. Any alternative interpretation is just pretend. Any other view fundamentally misunderstands how correspondence between lawyers for adverse parties already engaged in a legal dispute actually works in the real world.

Plaintiff should not be rewarded for baiting Proctorio into what reasonably appeared to be a settlement discussion governed by Federal Rule of Evidence 408. The lawyers for Proctorio reasonably thought the point of this communication was to resolve the ongoing dispute informally and without burdening the Court. *See* Declaration of Heather Horrocks ("Horrocks Decl."), ECF No. 15 at ¶¶ 7-9. Plaintiff's "gotcha" approach to this litigation is precisely what the Ninth Circuit has stated Rule 408 is supposed to prevent. *See Hudspeth v. Comm'r*, 914 F.2d 1207, 1213-14 (9th Cir. 1990) (Rule 408 protects the settlement negotiations to promote the "public policy favoring the compromise and settlement of disputes.") (internal quotation marks and citation omitted).

For these reasons, and the reasons stated below, Proctorio respectfully requests that the Court grant the Motion to Strike.

## **ARGUMENT**

### I. **The Statements at Issue are Governed by Rule 408.**

Rule 408 provides that "statement[s] made during compromise negotiations about [a] claim" are "not admissible" to "prove or disprove the validity . . . of [the] disputed claim . . . ." *See* Fed. R. Evid. 408(a). "Although Rule 408 patently applies to evidence, the rationale for the exclusion of evidence equally applies to excluding confidential

settlement discussion from being revealed in pleadings." *Washington v. Pac. Summit Energy LLC*, No. 20-CV-290, 2021 WL 229653, at *4 (S.D. Tex. Jan. 21, 2021). Federal district courts regularly grant motions to strike allegations that violate Rule 408 from pleadings. *See Ogundele v. Girl Scouts-Arizona Cactus Pine Council, Inc.*, No. CV-10-1013-PHX, 2011 WL 1770784, at *9 (D. Ariz. May 10, 2011); *Ross v. Dejarnetti*, 514 F. Supp. 3d 845, 852 (E.D. La. 2021) ("Because Federal Rule of Evidence 408 prohibits [the defendant] from relying on statements made during settlement negotiations to prove the validity of his claim, these allegations are immaterial and must be stricken pursuant to Federal Rule of Civil Procedure 12(f)."); *Philadelphia's Church of Our Savior v. Concord Twp.*, No. Civ.A. 03-1766, 2004 WL 1824356, at *2 (E.D. Pa. July 27, 2004) ("While Rule 408 does not apply to pleadings directly . . . allegations in a complaint may be stricken, under Rule 12(f), as a violation of these policies.") (collecting cases); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y. 1992), *aff'd sub nom.*, 23 F.3d 398 (2d Cir. 1994) (finding that "[t]he settlement discussions alleged by plaintiff violate Rule 408 and thus are stricken from the complaint pursuant to Rule 12(f).").

### A. *Paragraphs 37-40 of Plaintiff's Complaint*

The alleged statements made by Proctorio's counsel, which Plaintiff repeated in paragraphs 37-40 of the Complaint, are governed by Rule 408. Plaintiff does not dispute that these statements were included in the Complaint to support the validity of his section 512(f) cause of action. *See* Opp. at 4-7. But Plaintiff is factually wrong to say these statements were not made during "compromise negotiations" about his infringement of Proctorio's copyrighted material.

As an objective matter, these lawyer-to-lawyer conversations squarely fit the definition of "compromise negotiations." On this question, it is the reasonable, objective understanding of the parties that matters. As one federal district court recently held:

> "To determine whether the statements are covered by Rule 408, the inquiry is whether the statements or conduct were intended to be part of the negotiations for compromise. . . . Thus, offers to settle, or statements made

4

alongside offers to settle, are excluded even if no settlement negotiations follow or if the party to whom the offer is made refuses to engage in compromise negotiations."

*Columbia Gas Transmission, LLC v. Haas*, 409 F. Supp. 3d 420, 435 (D. Md. 2019), *aff'd*, 837 F. App'x 155 (4th Cir. 2020) (internal quotation marks, citations, and alterations omitted). *See also* 2 Weinstein's Federal Evidence § 408.02 (2021) (herein "Weinstein") ("[T]he purpose of the expanded exclusionary rule is to ensure freedom of communication with respect to compromise negotiations."). Courts in this District broadly interpret Rule 408 to "extend[] its coverage to all conduct and statements during negotiations" because, "[t]o promote settlement disputes, there must be full and frank disclosure by each party of his or her position, and the facts on which he or she relies to sustain that position." *Nomo Agroindustrial SA DE CV v. Enza Zaden N. Am., Inc.*, No. CV 05-351-TUC, 2009 WL 211085, at *3 (D. Ariz. Jan. 29, 2009). "The best hope of a satisfactory compromise lies in the confidence of the participants that they can speak freely." *Id.* (quoting Weinstein § 408.05). Given the ongoing and active dispute between Plaintiff and Proctorio,[2] no reasonable lawyer would have engaged in a communication regarding that same dispute just to chitchat. It is even less realistic that a lawyer would speak with the lawyer for an adverse party to support the adverse party's efforts to develop a cause of action against that lawyer's client.

Plaintiff's brief accuses Proctorio's motion to strike of relying on "conclusory assertions" that these were "compromise negotiations." *See* Opp. at 6. That accusation is simply not credible. There was already a developing legal dispute between the parties, and the parties scheduled discussions to "discuss the basis for" that dispute (including "the basis for . . . Proctorio's infringement claim") (Gagliano Decl. at ¶¶ 2-3), and to "correct[]

---

[2] The fact that these communications occurred *before* Plaintiff filed his complaint in this litigation (even though they occurred *after* Proctorio filed its DMCA and abuse claims) is immaterial for Rule 408 purposes. *E.g.*, *Columbia Gas*, 409 F. Supp. 3d at 435 ("Although these statements were made prior to the commencement of this litigation, compromise negotiations regarding a disputed claim may exist before litigation has commenced.").

5

1   . . . misunderstandings" in the hopes of convincing Proctorio to "retract its claims of
2   infringement" and to make Plaintiff's litigation strategy to seek "declaratory relief . . .
3   unnecessary" (*id*. ¶ 7). Discussions of those topics in that posture qualify, under any
4   plausible definition, as "compromise negotiations."

5         The evidence here is clear that Proctorio's counsel reasonably believed these
6   communications were "compromise negotiations" protected by Rule 408. Proctorio's
7   counsel labeled its contemporaneous correspondence with a subject line that contained the
8   words "**Confidential**," "**Settlement**," and "**Subject to Rule 408**." *See* Horrocks Decl. at
9   Ex. A. Plaintiff's counsel then responded to that email and "decided to decline Proctorio's
10  proposal." *Id*. Facing this clear evidence that the parties conducted themselves as though
11  these discussions were protected by Rule 408, Plaintiff has offered no evidence to suggest
12  that his counsel advised Proctorio's counsel that these conversations were *not*
13  "compromise negotiations" or that Plaintiff did *not* intend for these discussions to be
14  protected from disclosure, and all relevant facts suggest otherwise.

15        Plaintiff's cases do not establish that counsel for one party can bait counsel for the
16  other party into freely discussing the merits of a claim in a forum that reasonably appears
17  to be protected by Rule 408, solely because one party secretly intends to use those
18  communications in pleadings or as evidence later in the ensuing litigation. Rather, in
19  *Rodriguez-Garcia v. Municipality of Caguas*, the First Circuit notably recognized that
20  Rule 408 did not govern one of the letters at issue because the statement there – unlike the
21  statements here – was "not the kind of statement that one would be reluctant to make to a
22  potential adversary in an effort to reach an agreement about a dispute . . . ." *Rodriguez-*
23  *Garcia v. Mun. of Caguas*, 495 F.3d 1, 12 (1st Cir. 2007). In *Wall Data Inc. v. Los Angeles*
24  *County Sheriff's Dep't*, the Ninth Circuit held that the memo at issue was not governed by
25  Rule 408 because it "merely recounted a meeting" between non-lawyers, which is not the
26  case here. 447 F.3d 769, 783-84 (9th Cir. 2006). The single piece of evidence that the
27  *Coogan* court declined to strike also involved communications between non-lawyers.
28  *Coogan*, 2005 WL 2789311, at *3 (striking all other "evidence of the email, phone and in-

person conversations" as violative of Rule 408). Though the letter at issue in *Craft* was sent between counsel, the court did not discuss either party introducing *any* evidence to suggest that the letter was intended *by either party* as a settlement or compromise negotiation – unlike here, where Proctorio's intent could not have been clearer. *Craft v. Banner Health*, No. CV-15-00987, 2017 WL 11496865, at *10 (D. Ariz. Apr. 12, 2017); *see generally* Horrocks Decl. In *Latorraca v. Centennial Technologies, Inc.*, the letter at issue included "statements suggest[ing that] settlement discussions had not yet begun at the time" – unlike here, where the communications were ***clearly marked as settlement communications that were both "confidential" and "Subject to Rule 408."*** 583 F. Supp. 2d 208, 213 (D. Mass. 2008); *see* Horrocks Decl. at Ex. A. In short, none of Plaintiff's cases dispute that the "freedom of communication" that Rule 408 protects cannot exist if the covert, unexpressed, and subjective intent of one party can neutralize the protections of Rule 408. Weinstein § 408.02.

B. *Paragraph 41 of Plaintiff's Complaint*

The statements made by Proctorio's lawyer, which Plaintiff repeats in paragraph 40, are also governed by Rule 408. Here, Plaintiff does not dispute that these statements were made during compromise negotiations. *See* Opp. at 7. But Plaintiff now theorizes that the statements described in paragraph 41 were not used to prove or disprove the validity of their section 512(f) cause of action. *Id*.

Any plain-text reading of the Plaintiff's complaint disproves this argument. Paragraph 41 provides that during settlement negotiations Proctorio's counsel stated that the company "assert[s] that Johnson's uses were infringing . . . ." ECF No. 1 ¶ 41. Both of Plaintiff's causes of action ***directly invoke*** the content of these communications. *See id*. ¶ 49 (alleging "Proctorio continues to maintain that Johnson's expression is infringing, even in the face of evidence contradicting core assumptions of its legal arguments."); *id*. ¶ 50 (alleging Proctorio's "continued refusal to acknowledge Johnson's activity as noninfringing . . . ."); *id*. ¶ 55 (alleging Proctorio "knowingly materially misrepresent[ed]

that Johnson's use . . . infringed Proctorio's copyrights.").[3]

## II. The Statements Meet the Rule 12(f) Standard.

Plaintiff fails to substantively contest that this material meets the applicable Rule 12(f) standard. Nonetheless, Plaintiff appears to agree that the movant "must show: 1) that the material is redundant, immaterial, impertinent, or scandalous or that the requested relief is unavailable and 2) how such material will cause prejudice." *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, No. CV-09-01531-PHX, 2010 WL 3034880, at *3 (D. Ariz. Aug. 3, 2020).

### A. *The Statements are "Immaterial."*

Plaintiff does not dispute that materials which are "inadmissible under Rule 408" are "therefore immaterial" for Rule 12(f). *See Ogundele*, 2011 WL 1770784, at *9 (granting motion to strike); *Coogan*, 2005 WL 2789311, at *2-3 ("[S]tatements made during the course of settlement negotiations are inadmissible.") (internal quotation marks and citation omitted). The Court accordingly should find that Proctorio meets this first element.

Plaintiff argues that the statements are not immaterial because "Proctorio's state of mind and the information of which it was aware are critical to Johnson's section 512(f) claim." Opp. at 9. Plaintiff's argument fails for two reasons. First, the statements are immaterial because they violate Rule 408. *Ogundele*, 2011 WL 1770784, at *9 ("Rule 12(f) provides that . . . settlement documents are inadmissible under Rule 408, and are therefore immaterial."). Second, statements made by Proctorio's lawyers *weeks or months*

---

[3] Footnote 2 of Plaintiff's Opposition Brief is revisionist history. Proctorio did not, in fact, "refus[e] to engage in settlement discussions unless Johnson signed an agreement that would *retroactively* designate pre-litigation communications" as confidential. Opp. at 6 (emphasis added). Though footnote 2 does not cite it, the "agreement" that Proctorio proposed is in the record (ECF 16-1), and it contains only one clause that would impose any "retroactive" applicability. Plaintiff's purported objections are entirely new. Proctorio's counsel offered to negotiate terms of this agreement, but Plaintiff's counsel refused to even negotiate terms, let alone mention any concern about "retroactive" applicability. Given Plaintiff's history of publicizing protected Rule 408 communications, the primary concern leading Proctorio's counsel to request a confidentiality agreement was to protect "the confidences of any Rule 408 discussions moving forward." Declaration of Gabriel M. Ramsey, ECF No. 16 at ¶ 9.

*after* the DMCA notices were filed are not evidence of Proctorio's state of mind *at the time those notices were filed*.

### B.  *The Statements are Prejudicial.*

Plaintiff also fails to address Proctorio's basis for arguing that the statements made in paragraphs 37-41 are prejudicial. *See* Opp. at 9-10. Allowing these confidential settlement communications to remain in the pleadings would cause prejudice in at least three ways. First, Rule 408's "exclusion of settlement evidence furthers public policy by promoting the voluntary settlement of disputes, which would be discouraged if evidence of compromise were later used in court." *Washington*, 2021 WL 229653, at *4 (internal quotation marks and citation omitted) (granting motion to strike two paragraphs of plaintiff's complaint that were protected by Rule 408). Second, Proctorio faces substantial prejudice that it will expend unnecessary time and money proceeding to discovery and litigating claims with no legitimate factual basis. The settlement discussions between lawyers regarding the nuances of fair use doctrine are the ***only*** factual allegations in Plaintiff's complaint regarding Proctorio's purported knowledge that there was no copyright infringement when it had previously submitted takedown notices. *See* ECF No. 1 at ¶¶ 37-41. Third, the use of these specific settlement discussions would "confuse[] the issues" in the case, *see G&G Closed Cir. Events LLC v. Barajas*, No. CV 19-05145-PHX, 2020 WL 1659903, at *1 (D. Ariz. Apr. 3, 2020), by improperly equating statements made by Proctorio's lawyers with Proctorio's internal DMCA decision-making processes completed weeks or months before the lawyer-to-lawyer communications.

### III.  **The Policy Behind Rule 408 Strongly Favors Granting the Motion.**

Rule 408 "is based on the policy of promoting the compromise and settlement of disputes. The benefits of such a policy include the reduction of court congestion and of expenditures for courts by avoiding unnecessary lawsuits, and the placing of the conduct of trials on a more ethical footing by the insistence on a modicum of fair play in pretrial maneuvers. A broad exclusionary rule is required to achieve such goals." Weinstein § 408.02. All of these policy considerations weigh in favor of granting Proctorio's Motion

to Strike.

## CONCLUSION

For the reasons stated herein, the Court should grant Proctorio's Motion to Strike.

Dated:  August 20, 2021                                   CROWELL & MORING LLP

By: _____
Justin D. Kingsolver
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: (202) 624-2500
Email: JKingsolver@crowell.com

Gabriel M. Ramsey*
Kristin Madigan*
Kayvan M. Ghaffari*
Jacob Canter*
**CROWELL & MORING LLP**
3 Embarcadero Center, 26th floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Email: GRamsey@crowell.com

*Admitted pro hac vice.

*Attorneys for Defendant Proctorio, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the Court E-Filing system, which sends notification of such filings to all registered participants.

By: */s/ Justin D. Kingsolver*

Justin D. Kingsolver

*Attorney for Defendant Proctorio*