Eric M. Fraser, 027241
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012
(602) 640-9000
efraser@omlaw.com

Cara Gagliano (*pro hac vice*)
Hannah Zhao (*pro hac vice*)
Andrew Crocker (*pro hac vice*)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, California 94109
(415) 436-9333
cara@eff.org
zhao@eff.org
andrew@eff.org

Attorneys for Plaintiff-Counterdefendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Erik Johnson, an individual,<br><br>                            Plaintiff,<br><br>vs.<br><br>Proctorio Inc., a Delaware corporation,<br><br>                            Defendant. | No. CV-21-00691-PHX-DLR<br><br>**PLAINTIFF-COUNTERDEFENDANT'S MOTION TO DISMISS COUNTS 3 AND 4 OF THE COUNTERCLAIMS**<br><br>**(Oral argument requested)** |
| Proctorio Inc., a Delaware corporation,<br><br>                            Counterclaimant,<br><br>vs.<br><br>Erik Johnson, an individual,<br><br>                            Counterdefendant. | |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff-Counterdefendant Erik Johnson hereby moves for dismissal of Counts 3 (copyright infringement) and 4 (tortious interference with contract and/or business expectancy) of Defendant-Counterclaimant Proctorio Inc.'s First Amended Counterclaims ("FAC," Dkt. 13). In compliance with LRCiv 12.1(c) and the Court's April 22, 2021 Order (Dkt. 6), Johnson certifies that the parties conferred in good faith regarding the basis for this motion but were unable to agree that the Counterclaims are curable by a permissible amendment. This motion is supported by the following memorandum of points and authorities.

**PRELIMINARY STATEMENT**

Although computer programs for remote exam administration existed prior to the COVID-19 pandemic, their use boomed as online learning suddenly became the norm. These "remote proctoring" programs, like the software marketed by Proctorio (the "Proctorio Software"), are able to constantly monitor students for the ostensible purpose of identifying violations of academic rules through various forms of electronic surveillance.

Critics of these computer programs are concerned that they pose serious risks to student privacy and security, and may not even deliver on the promise to objectively protect academic integrity. Many are also concerned that, as deployed, these technologies exacerbate racial and socioeconomic divides with respect to student performance. In light of these worries, it is no surprise that students, educators, and civil rights groups have mobilized against the usage of proctoring software by academic institutions.

Based in part on his own research and analysis as a computer science student, defendant Erik Johnson shares these concerns. In communicating his perspective, Johnson has amplified public statements by other critics; applauded institutional decisions in line with his beliefs; and used humor, hyperbole, and irony in articulating his opinions. Johnson has also posted short excerpts of computer code from the Proctorio Software and a screenshot from a Proctorio tutorial video, in order to explain and support his own analysis of flaws in Proctorio's code.

Proctorio's counterclaims seek to punish Johnson for this protected expression. Based on Proctorio's own allegations, however, the Court can dispense with two of Proctorio's counterclaims immediately.

Proctorio's copyright claim targets a quintessential fair use. On September 7, 2020, Johnson published a tweet thread criticizing Proctorio, based in part on his examination of files that are automatically downloaded to any computer (including Johnson's) that installs the Proctorio Software. The tweet thread criticized Proctorio for, among other things, public claims seemingly contradicted by its software code, the invasiveness of the Proctorio Software, features of the software raising equity concerns, and the high level of control the software had over users' computers. As support for his criticisms, he included links to short excerpts from the Proctorio Software code (the "Excerpts") and a screenshot from a Proctorio video (the "Video Screenshot"). Proctorio alleges that posting this material infringed Proctorio's copyrights in the software code and video. Even accepting Proctorio's factual allegations as true, however, Johnson's uses were non-infringing fair uses as a matter of law.[1]

As for Proctorio's tortious interference claim, Proctorio does not and cannot allege a meaningful causal link between anything Johnson has done and any harm Proctorio has suffered. In the wake of the widespread movement against the use by academic institutions of remote-proctoring programs, some school have understandably reconsidered their relationships with these software companies, including Proctorio. Proctorio attempts to lay these decisions at Johnson's feet, FAC at 47, ¶ 123, but offers nothing more than naked assertions in support. That is insufficient to plead but-for causation, especially in light of Proctorio's concessions that Johnson is just one of many to criticize Proctorio, that his advocacy has included truthful, good faith criticisms, and that at least one school ended its relationship with Proctorio because of a student petition—resulting in press coverage that doubtless did as much or more to undermine

---

[1] For the purposes of this motion, Johnson assumes, but does not concede, that the Excerpts and Video Screenshot include copyrightable expression.

Proctorio's business reputation as any of Johnson's tweets. FAC at 18–19, 23, ¶¶ 6–7, 19(b).

Because Johnson's uses of Proctorio materials were lawful on the face of the FAC and because Proctorio has not plausibly alleged tortious interference, Counts 3 and 4 of the FAC should be dismissed.

## ARGUMENT

**I.     Johnson Is Entitled to a Finding of Fair Use As a Matter of Law.**

A court can dismiss a claim of copyright infringement under Rule 12(b)(6) where a defense of fair use is clear from the face of the complaint and any incorporated materials. *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 967, 972 (C.D. Cal. 2007); *see also Fisher v. Dees*, 794 F.2d 432, 435–36 (9th Cir. 1986) (judgments pertaining to fair use "are legal in nature" and should be made by the court); *Levingston v. Earle*, 2014 WL 1246369, at *2 (D. Ariz. Mar. 26, 2014) (dismissing copyright claim under Rule 12(b)(6) based on fair use).

Here, even assuming the truth of all well-pleaded facts in Proctorio's Counterclaims, Johnson's uses of the Excerpts and the Video Screenshot are clear-cut fair uses as a matter of law—no different from quoting a book in a book review or reproducing a document to use as evidence in a lawsuit. *See Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199 (2021) (fair use limits exclusive rights in computer programs just as it does for books and films).

The fair use analysis centers on four statutory factors: (1) the purpose and character of the use, including whether the use was noncommercial; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use on the market for the copyrighted work. analyzed together in light of the purposes of copyright. 17 U.S.C. § 107. Based on the allegations of the Counterclaims alone, each of these factors favors fair use here.

**A.     The Purpose and Character of the Uses Favor Johnson.**

The purpose of Johnson's uses is clear on their face: Johnson posted the Excerpts

4

and Video Screenshot to report his findings from his investigation of the Proctorio Software, educate the public about what it does, and provide evidence supporting his criticisms about the invasiveness of the Proctorio Software and equity concerns that it raises. *See* FAC, Ex. B-3 at 28–32. Johnson had no commercial purpose, nor does Proctorio allege otherwise.

This type of noncommercial use for commentary and criticism lies at the core of fair use protection. *See* 17 U.S.C. § 107 (identifying criticism and comment as favored purposes); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 583 (1994) (comment and criticism "traditionally have had a claim to fair use protection"); *Savage v. Council on Am.-Islamic Rels., Inc.*, 2008 WL 2951281, at *6 (N.D. Cal. July 25, 2008) (reproducing portions of video to criticize it was fair use).

Moreover, such critical uses are by their nature transformative, *Campbell*, 510 U.S. at 583, and Johnson's uses are no exception: they combine the copyrighted material with the commentary in Johnson's tweets to add new meaning and serve the new and different purpose of sharing evidence-backed criticism of Proctorio with the public. *Cf. New Era Publ'ns Int'l ApS v. Carol Publ'g Grp.*, 904 F.2d 152, 156 (2d Cir. 1990) (excerpting writings by subject of biography "to convey the author's perception of [the subject's] hypocrisy and pomposity" was fair use); *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 884 (N.D. Cal. 2020) (posting materials in forum dedicated to criticism of copyright holder, with purpose of criticizing organization and sparking discussion about it, was transformative).

In deciding a Rule 12(b)(6) motion, a court may disregard conclusory statements and allegations that are contradicted by other allegations in the complaint or documents attached as exhibits. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). Such is the case with Proctorio's contention that the allegedly infringing tweets lack a connection to any comment or criticism, which contradicts both the record and Proctorio's own allegations. *First*, Johnson's further

comments in the thread provide context for the tweets at issue and illuminate their purpose. For example, after posting the allegedly infringing tweets, Johnson wrote in the thread: "Not only are the privacy concerns very real, but Proctorio, by nature, discriminates against low-class families. Forcing a student to have a private, quiet room with a quality webcam, microphone, stable internet connection, and computer can be nearly impossible for some." FAC, Ex. B-3 at 29; *cf. id.* at 31–32 (identifying Proctorio features related to these requirements). The next two tweets called on universities to reconsider using Proctorio based on these concerns and others. *Id.* at 29. These concluding comments reflect the purpose of the allegedly infringing tweets—to identify features of the Proctorio Software that raise privacy and equity concerns. Later, on September 15, 2020, Johnson quote tweeted[2] his September 8 thread and wrote: "Once students find out about what the software is possibly capable of, they're usually against using it. It's getting people informed that's the hard part. I'm continually updating a thread on my Proctorio findings." *Id.* at 24. Here, Johnson explains his purpose of informing students about how the Proctorio Software works so that they can reach their own informed conclusions. The record thus demonstrates the educational and critical purposes of the allegedly infringing tweets.

      *Second*, Proctorio's own claims—that the allegedly infringing tweets falsely imply Proctorio makes certain decisions impacting test-takers, has greater access to sensitive information than it does, and otherwise invades users' privacy[3]—effectively concede the connection between the content of the tweets at issue and Johnson's privacy- and equity-related criticisms. FAC at 32–34, ¶ 58. Moreover, Proctorio's aggressive denials show exactly why it was important for Johnson to support his claims by providing his source materials: the original code sections and a demonstration of the software. *Cf. Savage*,

---

[2] "Quote tweeting" is reposting an earlier tweet and adding new content to it.
[3] Johnson notes that Proctorio's theory of falsity with respect to these tweets is dependent on assuming that all of Johnson's references to "Proctorio" necessarily refer to Proctorio Inc., rather than the Proctorio Software as employed by licensees. That is not a reasonable inference.

2008 WL 2951281, at *6 (finding it fair to use audio excerpts to enhance credibility of critique of their content). In computer science, as in other fields, students are taught to support their conclusions with evidence, so that others can test those conclusions themselves. That is precisely what Johnson did here.

### B. The Nature of the Copyrighted Works Favors Johnson.

The nature of the works at issue—Proctorio's software code and tutorial video—also weighs in favor of fair use because they are primarily factual and/or functional. Under this factor, the law provides lesser copyright protection "where copyrightable material is bound up with uncopyrightable material," as is almost always the case with computer programs. *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1198 (2021); *see also Campbell*, 510 U.S. at 586 (distinguishing "informational" works from more purely "creative" works). To the extent that Proctorio's software code contains copyrightable expression, it is "bound up with" the code's functional purposes (to make the software work as intended) and uncopyrightable facts and ideas (e.g., what metrics the software analyzes). *See Google*, 141 S. Ct. at 1202. Likewise, any copyrightable elements of Proctorio's tutorial video are intertwined with the uncopyrightable facts it contains about how the Proctorio Software works.

### C. The Amount and Substantiality of the Portions Used Favor Johnson.

The amount and substantiality of the copyrighted material used also weigh in favor of fair use. This factor favors fair use if the portion used is "reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. Johnson's uses easily meet this standard. Johnson included only those lines of software code that directly supported his tweets. *Compare* FAC, Ex. B-3 at 28, 31–32 *with* Compl. (Dkt. 1), Exs. 2–5.[4] These

---

[4] The Court may consider the code excerpt exhibits to the Complaint in deciding this motion under the doctrine of incorporation by reference. *See Daniels-Hall*, 629 F.3d at 998; *Shame on You Prods., Inc. v. Banks*, 1201 F. Supp. 3d 1123, 1144–45 (C.D. Cal. 2015). The code excerpts are referenced repeatedly in the FAC, they are central to Proctorio's claim of copyright infringement, and their authenticity is not in dispute. *See, e.g.*, FAC at 23–24, 38–39, ¶¶ 22–23, 67–71.

7

excerpts consist of 304 lines of code, out of the many thousands, if not millions, of lines that make up a complete software program. Compl., Exs. 2–5. They also are qualitatively insubstantial: the three language file excerpts contain nothing but message text that would be displayed to someone reviewing exam statistics, and the JavaScript file excerpt contains only a list of blacklisted programs. Compl., Exs. 2–5. The excerpts do not contain, for example, the code necessary for calculating exam statistics, implementing the program blacklist, monitoring exam activity, or any other core function of the Proctorio Software.

As to the Video Screenshot, Johnson used a single still frame, without audio or closed captions, from the full video to demonstrate the ability of professors using the Proctorio Software, and potentially Proctorio employees, to view 360-degree images of students and their homes. FAC, Ex. B-3 at 31. *Cf. Weinberg v. Dirty World, LLC*, 2017 WL 5665023, at *11 (C.D. Cal. July 27, 2017); *Sony Computer Entm't Am., Inc. v. Bleem, LLC*, 214 F.3d 1022, 1028 (9th Cir. 2000). In *Weinberg*, a California district court found that using a single still frame from a video was a *de minimis* use under the third factor, even though the original video was only five seconds long. Similarly, in *Sony* the Ninth Circuit explained that because video is projected at 30 frames per second, a video game screenshot represents only 1/30th of a second's worth of the work, and this favors fair use.

Because Johnson used only small portions of Proctorio's works that were no more than was necessary for his purpose, the third fair use factor weighs in his favor.

### D. The Market Effect of the Uses Favors Johnson.

The fourth factor favors fair use because Proctorio does not and cannot allege that Johnson's uses will cause the kind of market harm that copyright law is designed to remedy.

Not all possible harms to the copyright holder are relevant to this factor. Rather, courts are to consider whether the use will affect the market for the original "by acting as a substitute for it." *Campbell*, 510 U.S. 591. Proctorio does not allege that the Excerpts—

essentially a list of display messages and types of computer programs, Compl., Exs. 2–5—serve as a market substitute for the Proctorio Software or that the Video Screenshot serves as a market substitute for the full tutorial video, and it could not plausibly do so. For example, a university seeking exam administration software could not use Johnson's tweets as a substitute for licensing an actual computer program. Proctorio also does not and could not allege plausibly allege lost royalties, because there is no licensing market for this type of use. *Campbell*, 510 U.S. at 592.

Instead, Proctorio's theory appears to be that Johnson's uses will harm the market for its software by damaging Proctorio's reputation and/or reducing demand for the Proctorio Software because of what the tweets reveal about the software. Even assuming the truth of these allegations for the purpose of this motion, these are not cognizable market harms for purposes of fair use analysis. *Id.* at 591–92; *Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*, No. C 09-1468 SBA, 2009 WL 2157573, at *6–*7 (N.D. Cal. July 17, 2009) ("[T]he relevant question is not whether the work itself has lost value, but rather, *whether the secondary use has usurped the commercial demand for the original*."), *aff'd,* 422 F. App'x 651 (9th Cir. 2011) (emphasis added). For example, quoting a few lines of a book in a negative book review does not undermine fair use, even if the negative review allegedly harms demand for the book.

Indeed, Proctorio's theory of harm does not depend on any reproduction of copyrightable expression; it could apply equally to the text of Johnson's tweets, which Proctorio does not and could not plausibly allege infringes their copyrights. Simply put, Proctorio's injury, if it has been harmed at all, does not stem from any copyright violation but rather Johnson's criticism and the reporting of uncopyrightable facts about what he found in Proctorio's code and documentation.

\*   \*   \*

Because all four fair use factors weigh in Johnson's favor, the Court should find fair use as a matter of law and dismiss Proctorio's complaint for copyright infringement.

## II. Proctorio Did Not State a Claim of Tortious Interference.

Under Arizona law, stating a claim of tortious interference with contract and/or business expectancy requires pleading five elements: (1) the existence of a valid contract or business expectancy, (2) the defendant's knowledge of the contract or expectancy, (3) intentional interference causing breach or termination of the contract or expectancy, (4) resulting damage to the plaintiff, and (5) that the defendant's conduct was independently improper. *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1025 (Ariz. 2005); *FLP, LLC v. Wolf*, 2017 WL 4699490, at *3 (D. Ariz. Oct. 19, 2017). The third element includes a requirement that the alleged interference be a but-for cause of the alleged injury. *See S. Union Co. v. Sw. Gas Corp.*, 180 F. Supp. 2d 1021, 1055 (D. Ariz. 2002).

Proctorio has failed to connect those dots, even at the pleading stage. To survive a Rule 12(b)(6) motion, a pleading must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677–78. Instead, Proctorio vaguely alleges that "certain educational institutions have narrowed, terminated, or refused to renew contracts with Proctorio" because of statements by Johnson and his alleged "co-tortfeasors." FAC at 47, ¶ 123. This conclusory allegation, "devoid of 'further factual enhancement,'" is insufficient to plead but-for causation. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also VDARE Found. v. City of Colo. Springs*, --- F.4th ----, 2021 WL 3716401, at *16 (10th Cir. Aug. 23, 2021) (causation not pleaded where plaintiff asserted that defendant's threat caused conference cancellation without "even one sentence providing the factual reason" given for cancellation); *Courser v. Mich. House of Representatives*, 831 F. App'x 161, 183 (6th Cir. 2020) (allegation that plaintiff suffered emotional distress because of defendant's conduct was conclusory statement insufficient to plead causation).

Indeed, Proctorio's claim is once again belied by own allegations, which indicate multiple alternative causes for these institutional decisions. For example, Proctorio concedes that Johnson is far from Proctorio's only critic, *e.g.*, FAC at 18–19, ¶¶ 6–7; he

just happens to be one of the few who has dared to sue them for their bad behavior.[5] The FAC identifies at least one university that terminated its relationship with Proctorio because of a student petition, with which Johnson had no involvement (and Proctorio does not claim otherwise). *Id.* at 23, ¶ 19(b). Proctorio has even conceded that Johnson himself has engaged in truthful, good faith criticism of Proctorio. *See id.* at 18–19, ¶ 7. In the face of these equally likely alternative reasons for institutions to have ceased or limited

---

[5] The Court may also take judicial notice of the slew of online news articles and opinion pieces discussing criticism of Proctorio, many of them published months before Johnson's September 2020 tweets. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (taking judicial notice of various publications as indication of what information was in the public realm). Examples include: Drew Harwell, *Mass School Closures in the Wake of the Coronavirus Are Driving a New Wave of Student Surveillance*, Wash. Post (Apr. 1, 2020), https://www.washingtonpost.com/technology/2020/04/01/online-proctoring-college-exams-coronavirus/; Naaman Zhou, *Students Alarmed at Australian Universities' Plan to Use Exam-Monitoring Software*, Guardian (Apr. 20, 2020), https://www.theguardian.com/australia-news/2020/apr/20/concerns-raised-australian-universities-plan-use-proctorio-proctoru-exam-monitoring-software; Sean Lawson, *Are Schools Forcing Students To Install Spyware That Invades Their Privacy As A Result Of The Coronavirus Lockdown?*, Forbes (Apr. 24, 2020), https://www.forbes.com/sites/seanlawson/2020/04/24/are-schools-forcing-students-to-install-spyware-that-invades-their-privacy-as-a-result-of-the-coronavirus-lockdown; Monica Chin, *Exam Anxiety: How Remote Test-Proctoring Is Creeping Students Out*, Verge (Apr. 29, 2020), https://www.theverge.com/2020/4/29/21232777/examity-remote-test-proctoring-online-class-education; Rebecca Heilweil, *Paranoia About Cheating Is Making Online Education Terrible for Everyone*, Vox (May 4, 2020), https://www.vox.com/recode/2020/5/4/21241062/schools-cheating-proctorio-artificial-intelligence; Shawn Hubler*, Keeping Online Testing Honest? Or an Orwellian Overreach?*, N.Y. Times (May 10, 2020), https://www.nytimes.com/2020/05/10/us/online-testing-cheating-universities-coronavirus.html; Shea Swauger, *Software That Monitors Students During Tests Perpetuates Inequality and Violates Their Privacy*, MIT Tech. Rev. (Aug. 7, 2020), https://www.technologyreview.com/2020/08/07/1006132/software-algorithms-proctoring-online-tests-ai-ethics/; Tyler Sonnemaker, *Tech Companies Promised Schools an Easy Way to Detect Cheaters During the Pandemic. Students Responded by Demanding Schools Stop Policing Them Like Criminals in the First Place*, Business Insider (Nov. 1, 2020), https://www.businessinsider.com/proctorio-silencing-critics-fueling-student-protests-against-surveilalnce-edtech-schools-2020-10; Colleen Flaherty, *No More Proctorio*, Inside Higher Ed (Feb. 1, 2021), https://www.insidehighered.com/news/2021/02/01/u-illinois-says-goodbye-proctorio.

their business with Proctorio, Proctorio has not alleged facts from which the Court could infer that Johnson's allegedly false statements were a but-for cause of any such decision. *See VDARE*, 2021 WL 3716401, at \*16–\*17 (noting presence of alternative possible causes in concluding that causation was not plausibly pleaded).

Proctorio also alleges in Count 4 that other schools "have raised concerns about these false allegations during the request-for-proposals or contracting processes." FAC at 47, ¶ 123. This is the only time Proctorio states that an institution actually mentioned any allegedly false statements, but it fails to plead that any legitimate business expectancy existed in these contexts, that such expectancy was interfered with, or that improper conduct by Johnson was the cause of such interference. *First*, Proctorio does not specifically allege that the allegedly false statements mentioned were made *by Johnson*. Instead, this paragraph refers vaguely to "false statements that Counterdefendant *and his co-tortfeasors* publicized." *Id.* (emphasis added). Without identifying who made the statements at issue and, if they were made by third parties, alleging facts that would permit an inference that Johnson was working in concert with the speakers, Proctorio has not pleaded that Johnson was responsible for the statements mentioned. *Cf. Mina Inv. Holdings Ltd. v. Lefkowitz*, 16 F. Supp. 2d 355, 359–60 (S.D.N.Y. 1998) ("Plaintiffs must allege 'but for' causation for each individual defendant and cannot satisfy that requirement merely by alleging that two or more defendants acted in concert to cause the breach."), *on reconsideration in part,* 184 F.R.D. 245 (S.D.N.Y. 1999).

*Second*, Proctorio does not allege that it failed to secure the referenced contracts—*i.e.*, that any expectancy was undermined.

*Third*, even assuming that it did not get those contracts, Proctorio also has not alleged sufficient facts to permit an inference that it had a reasonable expectation that it would receive them. "Arizona law requires that when the relationship is *prospective,* there must be a reasonable assurance that the contract or relationship would have been entered into." *Megawatt Corp. v. Tucson Elec. Power Co.*, 1989 WL 95602, at \*8 (D. Ariz. May 26, 1989) (citing *Marmis v. Solot Co.,* 573 P.2d 899 (Ariz. App. 1977)). Where the alleged

interference occurs at a request-for-proposal or bidding stage, the plaintiff must ultimately prove "with a reasonable assurance that it would have prevailed in the bidding" but for the defendant's conduct. *Id.* Proctorio has not alleged any facts that, if true, would permit such an inference here.

Finally, Proctorio alleges that some schools "have announced total bans on remote proctoring technology of any kind." FAC at 47, ¶ 123. Again, Proctorio has not alleged that improper conduct by Johnson—a single college student—was a but-for cause of any such bans or that such bans—which affect not only Proctorio but also its competitors—interfered with a legitimate expectation that Proctorio would receive business from these institutions. This allegation therefore also fails to provide a basis for Proctorio's tortious interference claim.

## CONCLUSION

Scrutiny of Proctorio's claims illuminates exactly what they are: an attempt to make an example out of one of Proctorio's critics. Even applying a Rule 12(b)(6) standard, Johnson's uses of Proctorio materials are unambiguous fair uses. Likewise, Proctorio has not alleged any factual basis for its implausible efforts to blame Johnson for the backlash it has faced in the past year. Johnson respectfully requests that the Court dismiss Proctorio's claims of copyright infringement and tortious interference.

DATED this 21st day of September, 2021.

          OSBORN MALEDON, P.A.

By <u>s/ Eric M. Fraser</u>
Eric M. Fraser
2929 North Central Avenue, Ste. 2100
Phoenix, Arizona 85012-2793

ELECTRONIC FRONTIER FOUNDATION
Cara Gagliano (*pro hac vice*)
Hannah Zhao (*pro hac vice*)
Andrew Crocker (*pro hac vice*)
815 Eddy Street
San Francisco, California 94109

Attorneys for Plaintiff-Counterdefendant