Justin D. Kingsolver (AZ Bar No. 035476)
  JKingsolver@crowell.com
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2500

Gabriel M. Ramsey (CA Bar No. 209218)*
  GRamsey@crowell.com
Kristin Madigan (CA Bar No. 233436)*
  KMadigan@crowell.com
Kayvan M. Ghaffari (CA Bar No. 299152)*
  KGhaffari@crowell.com
Jacob Canter (CA Bar No. 324330)*
  JCanter@crowell.com
**CROWELL & MORING LLP**
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Telephone: (415) 986-2800

  *Admitted pro hac vice*

*Attorneys for Defendant Proctorio, Inc.*

CROWELL & MORING LLP
ATTORNEYS AT LAW

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Erik Johnson, an individual, | Case No. 2:21-cv-00691-DLR |
| Plaintiff, | |
| v. | |
| Proctorio, Inc., a Delaware corporation, | **PROCTORIO INC.'S OPPOSITION TO PLAINTIFF-COUNTERDEFENDANT'S MOTION TO DISMISS COUNTS 3 AND 4 OF THE FIRST AMENDED COUNTERCLAIMS** |
| Defendant. | |
| Proctorio, Inc., a Delaware corporation, | |
| Counterclaimant, | |
| v. | |
| Erik Johnson, an individual, | |
| Counterdefendant. | |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL ALLEGATIONS ......................................................................................2

LEGAL STANDARD ................................................................................................4

ARGUMENT .............................................................................................................5

I.   THE MOTION ASKS THE COURT TO CONSTRUE ALL FACTUAL
     ALLEGATIONS IN THE LIGHT *LEAST* FAVORABLE TO PROCTORIO....5

II.  PROCTORIO PLAUSIBLY ALLEGES NO FAIR USE. ...........................7

     A.   Factor 1: Purpose and Character .................................7

     B.   Factor 2: Nature of the Copyrighted Works .........................9

     C.   Factor 3: Amount and Substantiality .................................10

     D.   Factor 4: Market Effect .................................................11

III. PROCTORIO PLAUSIBLY ALLEGES TORTIOUS INTERFERENCE...............13

IV.  THE COURT SHOULD AWARD PROCTORIO ITS ATTORNEYS' FEES
     AND COSTS..............................................................................17

CONCLUSION .........................................................................................17

CROWELL & MORING LLP
ATTORNEYS AT LAW

1   Defendant-Counterclaimant Proctorio, Inc. ("Proctorio") hereby files this

2   opposition to Plaintiff-Counterdefendant Erik Johnson's motion to dismiss Counts 3

3   (copyright infringement) and 4 (tortious interference) of the First Amended Counterclaims

4   (ECF No. 31, and "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

5   **PRELIMINARY STATEMENT**

6   Mr. Johnson's motion to dismiss Proctorio's copyright infringement counterclaim

7   is entirely and unapologetically factual. His counsel admitted this in the pre-filing meet-

8   and-confer, stating that the planned motion to dismiss was based on a "disagree[ment]

9   how facts should be interpreted" by the jury. *See* Declaration of Gabriel M. Ramsey

10  ("Ramsey Decl.") ¶¶ 3-4.[1] Rule 12(b)(6) motions are not the proper vehicles to address

11  factual disagreements.

12  Mr. Johnson's motion disregards the black-letter rule that, on his Rule 12 motion,

13  Proctorio's "well-pled factual allegations are taken as true and construed in the light most

14  favorable to" Proctorio. *Aluminum Trailer Co. v. Sidi Spaces LLC*, 2020 WL 4039095, at

15  *3 (D. Ariz. July 17, 2020) (Rayes, J.) (citing *Cousins v. Lockyer*, 568 F.3d 1063, 1067

16  (9th Cir. 2009)). Mr. Johnson turns this rule on its head, and asks the Court to construe *all*

17  of the facts in the light *least* favorable to Proctorio.

18  Procedural issues aside, Johnson's infringement was clearly not a fair use. The law

19  does not permit the theft and publication of copyrighted works to further knowingly

20  misleading, injurious, and factually false statements about those works and other matters,

21  all for the purpose of destroying the market for the works and the company that provides

22  them. The tort of trade libel is well-established, and speech interests give way when

23  knowingly injurious falsehoods are involved. *See* Restatement (Second) of Torts § 623A.

24  This is true both for purposes of the tort and for fair use considerations where, as here, the

25  copyrighted content is both the subject of and the medium for libel. Discovery has already

26  begun on all of these issues, including the falsity of Mr. Johnson's statements about

27

28  ---

[1] Counsel for Mr. Johnson disagrees that this admission was made. Ramsey Decl. ¶¶ 3-4.

Proctorio, as well as his specific knowledge of that falsity. *See* Ramsey Decl., Ex. C.

Mr. Johnson solely disputes tortious interference by asserting that Proctorio does not sufficiently plead causation between his interference and the termination of specific contracts. But the FAC alleges exactly that, so this counterclaim should not be dismissed.

## FACTUAL ALLEGATIONS

Since 2013, Proctorio has licensed proprietary, copyrighted technology that protects exam integrity in distance-learning environments. FAC ¶¶ 4, 35. The technology is distinct from other remote proctoring solutions because, *inter alia*, it can be integrated into a school's assessment platform and because it does not require human surveillance. *Id*. Proctorio's software allows a school to protect exam integrity by confirming the test-taker's identity, flagging banned content, and blocking certain programs. *Id*. ¶¶ 5, 40-43. The technology lowers the costs of ensuring exam integrity, and enables students to take exams from anywhere with confidence that the results can be trusted. *Id*. ¶ 36. Proctorio's code that carries out these functionalities, including the code that Mr. Johnson unlawfully copied and posted online, is highly creative—involving numerous idiosyncratic choices in language, syntax, structure, sequence, and organization. *Id*. ¶ 71; ECF No. 1, Exs. 2-5. The software is powerful, highly valuable, and unlike other options on the market.

Proctorio goes to great lengths to ensure that its software protects the security and privacy of all student users. FAC ¶¶ 44-48. The company never collects biometric data from students. *Id*. ¶ 44. Its state-of-the-art data encryption provides multiple layers of protection to student data. *Id*. ¶ 45. And its "zero-knowledge encryption" approach means that it is impossible for Proctorio to access any student data without first being given access affirmatively by the school or the student. *Id*. ¶ 46.

Mr. Johnson is fully aware of the substantial and successful efforts that Proctorio takes to protect the security and privacy of its student users. *Id*. ¶¶ 10-19, 49-53. He knows this because he admits that he has used Proctorio's software, researched its capabilities, participated on a school committee that existed solely to study the Proctorio software, and reviewed documents explaining Proctorio's industry-leading privacy protections,

CROWELL & MORING LLP
ATTORNEYS AT LAW

CROWELL & MORING LLP
ATTORNEYS AT LAW

including materials sent in response to a U.S. Senate inquiry into the industry. *Id*.

No software is perfect, and Proctorio welcomes good-faith scrutiny and criticism of its product. *Id*. ¶¶ 6-8. Indeed, public criticism has led to meaningful improvements in the technology. *Id*. ¶ 8. But blatant, knowing lies are not criticism. Mr. Johnson's conduct went far beyond mere criticism. *Id*. ¶¶ 10-16, 54-60, 67-72. He knowingly made false statements of fact, which, far from being protected speech, are utterly libelous. *Id*.[2] Johnson has lifted substantial and highly valuable Proctorio copyrights and has posted (and re-posted) the copyrights – verbatim – across Twitter, Pastebin, and GitHub. *Id*. ¶¶ 65-66. He has done this to carry out knowingly false and misleading statements about that copyrighted software, with the intended effect of supplanting the market for that same software and destroying Proctorio entirely. *Id*. ¶¶ 67-72. Mr. Johnson has not bothered to hide his improper motive: he has publicly flaunted his aim of "abolish[ing] online proctoring." *Id*. ¶¶ 15 n.9, 121. He has wrongfully copied and published the copyrights, including foundational creative code, as part of false statements that he published for the commercial purpose of promoting his own reputational interests. *Id*. ¶¶ 67-72.

Indeed, through a string of tweets that Mr. Johnson has published and re-published on multiple occasions, he has knowingly made false and injurious statements about Proctorio and its copyrights. *Id*. ¶¶ 54-60. The libelous conduct arises both through the acts of infringement and also through separate false and injurious statements. *Id*.

For example, Mr. Johnson infringed Proctorio's copyrights to spread falsehoods that the company invades the local computers of students without their consent and spies on them. *Id*. ¶¶ 11, 13, 22 n.13. Mr. Johnson knows this is untrue, and yet he infringed Proctorio's copyrights to state it nonetheless. *Id*. ¶¶ 15, 48, 49-53. He again infringed Proctorio's copyrights, including both significant and valuable portions of code and an image of how the product functions, to spread more falsehoods that the company takes no data-security efforts and leaves student information vulnerable to theft. *Id*. ¶¶ 13, 19, 51,

---

[2] Mr. Johnson has not moved to dismiss Proctorio's trade libel counterclaim. *Id*. ¶¶ 86-93.

CROWELL & MORING LLP
ATTORNEYS AT LAW

56, 58-59. Again, Mr. Johnson knows that this is untrue yet nonetheless infringed Proctorio's copyrights to make this libelous claim. *Id*. He *again* infringed Proctorio's copyrights when he falsely told the public that Proctorio determines whether students have cheated on exams, despite knowing that a university – not Proctorio – makes that decision. *Id*. ¶¶ 14, 36-38, 57. Mr. Johnson *again* infringed Proctorio's copyrights to publish the lie that Proctorio breaches the Google Chrome Store's terms of use and hides its product's true functionality. *Id*. ¶¶ 12, 59. Mr. Johnson knows that these statements – which he used to target one of Proctorio's most important business relationships (its relationship with the Chrome Store, which is Proctorio's primary distribution method) – are not true. *Id*.

As a result of Mr. Johnson's infringement, Proctorio has seen injury to the market for its product, as well as increased difficulty securing and maintaining licensing agreements with universities. *Id*. ¶¶ 73-85. For example, despite advanced conversations with the University of Illinois regarding a multi-year contract for Proctorio's services, the University declined to extend its contract after Mr. Johnson's tweets were published. *Id*. Miami University, where Mr. Johnson is a student, also canceled its contract with Proctorio after he publicly and repeatedly told them to. *Id*. ¶ 75. Mr. Johnson's campaign of false and misleading statements containing the infringed copyrights have had a significant negative impact on the market for Proctorio's software, as well as its reputation and position in the remote proctoring software market.

## LEGAL STANDARD

The Court must take the allegations in the FAC "as true" and "construe [them] in the light most favorable to" Proctorio. *Aluminum Trailer*, 2020 WL 4039095, at *3.

To hide the factual nature of his motion, Mr. Johnson cites three cases where a court dismissed an infringement claim on fair use grounds at the pleading stage. *See* ECF No. 34 ("MTD") at 4. None apply here. In *Burnett* and *Fisher*, there were **no** material facts in dispute, while the parties here have disputes on **every** material fact. *See Burnett v. Twentieth Century Fox Film Corp*, 491 F. Supp. 2d 962 (C.D. Cal. 2007); *Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986). And in *Levingston*, the Court *sua sponte* determined fair use

despite the parties not briefing the issue, where here the issue is fully presented and the facts and law are highly contested. *Levingston v. Earle*, 2014 WL 1246369, at *1 (D. Ariz. Mar. 26, 2014).

Instead, the Court should follow the overwhelming weight of authority which refuses to resolve disputed, heavily-factual fair use determinations on a Rule 12 motion. "Fair use is a mixed question of law and fact." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U. S. 539, 560 (1985); *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199 (2021) (same, after full jury trial). As such, and because fair use "is an affirmative defense," courts in this District have held that fair use generally may "not be raised in a motion to dismiss." *Delano v. Rowland Network Communc's. LLC*, 2020 WL 2308476, *4 (D. Ariz. May 8, 2020) (refusing to even embark on a fair use inquiry). This is the widely-accepted practice in the Ninth Circuit. *See Dr. Seuss Enters., L.P. v. ComicMix LLC*, 256 F. Supp. 3d 1099, 1104 (S.D. Cal. 2017) ("In light of a court's . . . limited access to all potentially relevant and material facts needed to undertake the analysis, courts rarely analyze fair use on a 12(b)(6) motion."); *Sushi Nozawa, LLC v. HRB Experience, LLC*, 2020 WL 159379 (C.D. Cal. Mar. 31, 2020) (courts typically "reserve the issue of fair use for summary judgment"); *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005) (fair use "is inappropriate for determination in a 12(b)(6) motion"); *Browne v. McCain*, 612 F. Supp. 2d 1125, 1130 (C.D. Cal. 2009) (declining to undertake fair use analysis on a 12(b)(6) motion).

## **ARGUMENT**

## I.   THE MOTION ASKS THE COURT TO CONSTRUE ALL FACTUAL ALLEGATIONS IN THE LIGHT *LEAST* FAVORABLE TO PROCTORIO.

Mr. Johnson asks the Court to flip the law on its head, and to construe every factual allegation in the light *least* favorable to Proctorio. For example, his motion simply presents as an established conclusion that the purpose of his infringement was "to report his findings from his investigation," to "educate the public," and to "provide evidence supporting his criticisms[.]" MTD at 4-5. Proctorio's answer and counterclaims strongly

CROWELL & MORING LLP
ATTORNEYS AT LAW

CROWELL & MORING LLP
ATTORNEYS AT LAW

dispute these claims, instead explaining that Mr. Johnson infringed Proctorio's copyrights for no legitimate purpose, and only to carry out knowing falsehoods that could raise his personal brand as a "security researcher" for commercial gain and destroy the market for a work against which he has an unexplained personal vendetta. *See, e.g.*, FAC, ¶¶ 10-16, 54-60, 67-72. The rules of discovery allow Mr. Johnson to seek evidence to support his view of the facts, but Proctorio's allegations must be accepted at this stage.

As another example, Mr. Johnson states that the infringed copyrighted code is "'bound up with' the code's functional purpose . . . and uncopyrightable facts and ideas." MTD at 7. He cites the Supreme Court's recent *Google LLC* decision to support this claim, yet flouts that the Supreme Court made this statement only after a jury trial and upon a fully developed record, which had focused discovery on distinguishing between types of code closer or further from the core of copyright. *Google LLC*, 141 S.Ct. at 1201-02. Indeed, an earlier ruling in that case established that short code declarations and their organization, all of which had a function and were part of a method of operation, were nonetheless creative expression protected by copyright. *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1361-68 (Fed. Cir. 2014). Such a granular and technical inquiry is highly factual and requires nuanced exploration of the evidence and expert views. Mr. Johnson cannot explain why Proctorio's code deserves less protection – nor could such an explanation be credited at this stage, as it is an unambiguously factual enterprise.

And Mr. Johnson improperly construes core material factual disputes in his favor when he concludes that he "included only those lines of software code that directly supported his tweets" and that the code taken is "qualitatively insubstantial[.]" MTD at 7-8. Proctorio has vigorously and specifically contested these bald conclusions, pleading in the FAC that the stolen code is entirely unrelated to any potentially legitimate criticism raised against the company, and was instead copied solely for the purpose of damaging the proctoring industry and commercializing his own profile. FAC ¶¶ 67-72. Proctorio has also made clear that Mr. Johnson's online posts published Proctorio's "secret sauce" and helped users circumvent Proctorio's exam integrity measures. *Id.* ¶¶ 22, 58, 71.

1    Given this procedural deficiency, Mr. Johnson's fair use argument should be

2  rejected and discovery should proceed. *See Delano*, 2020 WL 2308476, *4. At minimum,

3  the Court must reject Mr. Johnson's fair use analysis and conduct its own inquiry with the

4  allegations properly construed in the light most favorable to Proctorio, which would lead

5  to the same result. The motion is meritless, and it should be denied.

6  **II.    PROCTORIO PLAUSIBLY ALLEGES NO FAIR USE.**

7    Fair use is a "mixed question of law and fact." *Google LLC*, 141 S.Ct. at 1999

8  (quoting *Harper & Row*, 471 U.S. at 560). This means that a Court may only decide

9  whether the infringing use nonetheless constitutes fair use as a matter of law after all of

10  the factual determinations have been resolved. *See Rimini St., Inc. v. Oracle Int'l Corp.*,

11  473 F. Supp. 3d 1158, 1214 (D. Nev. 2020).

12    While a four-factor analysis guides this factual determination, these factors are

13  simply "general guidance" for the traditionally equitable defense of fair use. *See, e.g.*,

14  *Harper & Row*, 471 U.S. at 560 ("The factors enumerated in the section are not meant to

15  be exclusive: '[S]ince the doctrine is an equitable rule of reason, no generally applicable

16  definition is possible, and each case raising the question must be decided on its own facts.'

17  House Report, at 65") (first alteration in original); *Campbell v. Acuff-Rose Music, Inc.*,

18  510 U.S. 569, 578 (1994) (the fair use inquiry "is not to be simplified with bright-line

19  rules," "calls for case-by-case analysis," and "the results must be weighed together, in

20  light of the purposes of copyright"). The lodestar of the fair use inquiry is whether the

21  infringer's use is fair in light of the circumstances. *See* 12 NIMMER ON COPYRIGHT II

22  (2021) (the fair use "test may perhaps be summarized by: importance of the material

23  copied or performed from the point of view of the reasonable copyright owner. In other

24  words, would the reasonable copyright owner have consented to the use? At times, custom

25  and public policy defines what is reasonable."). As explained herein, when the allegations

26  are construed in Proctorio's favor, there is nothing fair about Mr. Johnson's conduct.

27    **A. Factor 1: Purpose and Character**

28    The FAC alleges that Mr. Johnson made knowingly false statements of fact through

CROWELL & MORING LLP
ATTORNEYS AT LAW

7

his infringements of both the valuable code and a depiction of how the software operates. FAC ¶¶ 10-25, 58-60. Reproduction of copyrighted material was the subject of and the medium for the knowingly false statements. It is well-established that the First Amendment does not protect knowingly false speech. *See Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1089 (9th Cir. 2002) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)); *see also Virginia State Bd. of Pharm. v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake."). The policies underlying fair use are informed by the constitutional lines that courts have drawn regarding socially unproductive speech and socially productive restraints on speech. *See Harper & Row*, 471 U.S. at 555-60 (relying on Supreme Court defamation caselaw to emphasize that First Amendment balancing could not so "expand fair use to effectively destroy any expectation of copyright protection in the work"); *Eldred v. Ashcroft*, 537 U.S. 186, 190 (2003) (emphasizing "the Framers' view that copyright's limited monopolies are compatible with free speech principles" and discussing consistency between the First Amendment and "fair use").

Thus, when assessing the "purpose and character" of Mr. Johnson's use of copyrighted material, it is entirely salient that the use was inextricably entwined with knowingly false statements about the software, its underlying code, and the company that developed it. In sum, copyright infringement to tell injurious lies falls on the wrong side of the constitutional balance, regardless of whether it is assessed as a matter of trade libel (which is a counterclaim that Proctorio alleges and that Johnson does *not* challenge) or as a matter of fair use. Such falsehoods do not "promote the progress of science and useful arts," which is the constitutional purpose of copyright. U.S. CONST. ART. I, SEC. 8. This is a line that the Supreme Court and the lower courts have carefully defined for over a century. Factor one thus strongly weighs against Mr. Johnson's fair use argument. *See, e.g.*, *Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 2021 WL 3271829, at *2 (S.D.N.Y. July 30, 2021) (no fair use of image of the "Emmy" statute in YouTube video spreading "wild conspiracy theories" and "dangerous misinformation,"

where infringer also accused copyright owner's representative of being involved in "nepotism, corruption, and CIA-led propaganda campaigns.") (internal quotation marks and citation omitted).

Moreover, in reaching the matter, deeply factual issues and credibility of witnesses abound, including knowledge and fine-grained determinations regarding falsity. These issues cannot be resolved on a Rule 12(b)(6) motion without the benefit of discovery.

Also, the FAC alleges that Mr. Johnson's infringement was commercial—in order to build up his brand as a crusading security researcher. FAC ¶ 71. Courts repeatedly hold that this kind of promotional use weighs against a finding of fair use. *See Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 61 (1st Cir. 2012) (finding that the first factor weighed against fair use where infringer posted copyrighted works online for educational purposes, but profited via an enhanced professional reputation); *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000) (same); *Harper & Row*, 471 U.S. at 562 ("The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material . . . .").

And finally, the FAC plausibly pleads that there was nothing transformative about Mr. Johnson's use of Proctorio's copyrights. FAC ¶¶ 67-72. His posts on Pastebin and Github are literally unadorned pieces of Proctorio's code. The FAC likewise alleges that his infringements were for the nontransformative purpose of publishing false statements about Proctorio's software to "abolish" its business and raise Mr. Johnson's own budding profile as a commercially viable "security researcher." *Id.* ¶¶ 59, 67-72. For example, the FAC alleges that Mr. Johnson infringed a depiction of the software's functionality in order to mislead the public about Proctorio's security measures and raise his own profile. *Id.*

### B. Factor 2: Nature of the Copyrighted Works

Mr. Johnson takes significant factual liberties to conclude, without the benefit of any expert or factual analysis, that the code here is just like the "user-centered declaratory code" at issue in *Google LLC*. *See* MTD at 7. But it is a fact question that cannot be

CROWELL & MORING LLP
ATTORNEYS AT LAW

resolved at this stage whether Proctorio's code is the type of code that is closer to or further from the sort of expression that the copyright laws are designed to protect.

Proctorio clearly alleges that its code is just the type of expression at the core of copyright protection. Proctorio has explained that the code is highly valuable and highly innovative in ways that have not been replicated and are not well-known to the public. FAC ¶¶ 4-5, 40-43. The code that carries out these functionalities, including *the very code* that Mr. Johnson posted online, is highly creative—involving numerous idiosyncratic choices in language, syntax, structure, sequence, and organization. *Id*. The Court must construe the FAC to reasonably allege that the code is in fact "closer to the core of copyright" and worthy of significant protection. *See Google LLC*, 141 S.Ct. at 1202 (citation omitted). Detailed evidence that has been requested in already-served discovery will establish and corroborate the highly creative nature of the copyrighted code as well.

Mr. Johnson's infringement of how the software operates fares no better. His throwaway argument that the depiction is intertwined with uncopyrightable facts is not relevant. MTD at 7. What is relevant instead is that Proctorio has plausibly alleged that this depiction discloses highly relevant and important information about the technology, and the misleading infringement causes the company injury. FAC ¶¶ 13, 19, 51-59.

### C. Factor 3: Amount and Substantiality

The Supreme Court has repeatedly stated "that even a small amount of copying may fall outside of the scope of fair use where the excerpt copied consists of the 'heart' of the original work's creative expression." *Google LLC*, 141 S.Ct. at 1205 (citing *Harper & Row*, 471 U. S. at 564–565). As Proctorio alleges, Mr. Johnson "disclosed a quantitatively and qualitatively significant part of the copyrighted code, all of which is highly creative. He has presented the code solely to disclose its literal contents and without any modifications or changes made to it." FAC ¶ 71. The FAC makes clear that Mr. Johnson published the heart of Proctorio's code when he "disclosed all of the code that is needed for a student to use a virtual machine to circumvent the technology and cheat on an exam." *Id*. In other words, his posts allow any Twitter user around the world to circumvent

1    Proctorio's product, nullifying some of Proctorio's essential functions. Finally, while Mr.

2    Johnson claims that he used "only those lines of software code that directly supported his

3    tweets," *see* MTD at 7, the FAC plausibly pleads the exact opposite: the code did not relate

4    at all to the alleged criticism, and that he instead infringed the code to harm Proctorio and

5    build up his own commercial reputation. FAC ¶¶ 16, 23, 67-72. Proctorio will prove these

6    facts through discovery; for now, they must be construed in Proctorio's favor.

7         Mr. Johnson points to the unsurprising fact that the video depiction is not the full

8    video. MTD at 8. He ignores that Proctorio has alleged that this depiction is part of – and

9    discloses the core functional purpose of – the software, and thus that the infringement is

10   for copyright purposes significant. *Google LLC*, 141 S.Ct. at 1205.

11        **D. Factor 4: Market Effect**

12        "Whenever a user puts copyrighted software to uses beyond the uses it bargained

13   for, it affects the legitimate market for the product." *Wall Data Inc. v. L.A. Cnty. Sheriff's*

14   *Dep't*, 447 F.3d 769, 781 (9th Cir. 2006). "Since fair use is an affirmative defense," Mr.

15   Johnson "must bring forward favorable evidence about relevant markets." *Dr. Seuss*

16   *Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997). He offers

17   no facts about the market for the copyrighted code that he infringed, and Proctorio has

18   disputed his conclusory and unsupported statements regarding the market effect of his

19   infringement. *E.g.*, FAC ¶¶ 23, 71. Factor four strongly weighs against fair use.

20        Mr. Johnson's argument—unsupported by discovery, market data, or expert

21   opinion—mischaracterizes the analysis in *Campbell* to suggest that the only consideration

22   that matters is whether the infringement "will affect the market for the original by 'acting

23   as a substitute for it.'" MTD at 8 (citing *Campbell*, 510 U.S. at 591). This is far from the

24   only inquiry required to assess the market effects of Mr. Johnson's infringement. Rather:

25        We must, of course, inquire whether, 'if [the challenged use] should become
         widespread, it would adversely affect the potential market for the
26        copyrighted work,' . . . , by diminishing potential sales, interfering with
         marketability, or usurping the market [ ]. If the copying resulted in the latter
27        effect, all other considerations might be irrelevant.

28

CROWELL & MORING LLP
ATTORNEYS AT LAW

*Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1523 (9th Cir. 1992), *as amended* (Jan. 6, 1993) (alteration in original; citations omitted). Indeed, the Supreme Court in *Harper & Row* found no fair use where the defendant's "use had not merely the incidental effect but the *intended purpose* of supplanting" the copyright owner's rights. 471 U.S. at 562.

Mr. Johnson's avowed wish is to destroy the market for the very remote exam proctoring software that he copied and used to promulgate knowing falsehoods. FAC ¶¶ 15 n.9, 121. Proctorio plausibly pleads that due to Mr. Johnson's false statements, potential sales and marketability toward other universities has faltered. Dissemination of Proctorio's copyrighted software, in the manner perpetrated by Mr. Johnson, both promulgates falsehoods that tend to interfere with the marketability of its software and to usurp the market, and further provides computer users with information necessary to circumvent the key features that prevent cheating, stripping the software of efficacy and, therefore, of value. His conduct does not just diminish Proctorio's reputation, but it eviscerates Proctorio's utility—destroying the market for the product, all of which Mr. Johnson has admitted are his very goals. These acts clearly interfere with the marketability of Proctorio's product. *See Nat'l Acad. of TV Arts & Scis., Inc.*, 2021 WL 3271829, at *6 (factor four weighed against fair use where copyrighted work used in "association … with dangerous misinformation" which would injure market for the work); *Sega*, 977 F.2d at 1523; *Hustler Magazine, Inc. v. Moral Majority*, 796 F.2d 1148, 1155-56 (9th Cir. 1986).

Further, Mr. Johnson argues that Proctorio incurred no cognizable harm as a result of his "criticism." MTD at 9. But Mr. Johnson's analogy, "quoting a few lines of a book in a negative book review," is inapposite where, as here, the criticism consists of knowingly false statements about the functionality and security of the software. Mr. Johnson's statements are unsupported by the pleadings and will remain unsupported after the close of discovery. While copyright laws may provide room for critical speech, these protections offer no safe harbor to knowingly false and misleading statements. *Virginia State Bd. of Pharm.*, 425 U.S. at 771.

Thus, as the Ninth Circuit has stated, "it is impossible to deal with the fourth factor

except by recognizing that a silent record on an important factor bearing on fair use disentitle[s] the proponent of the defense." *Penguin Books*, 109 F.3d at 1403 (quoting *Campbell*, 510 U.S. at 594). Proctorio will show through discovery the negative effect Mr. Johnson's infringement has had on the remote proctoring software industry.

## III.   PROCTORIO PLAUSIBLY ALLEGES TORTIOUS INTERFERENCE.

To adequately state a claim for tortious interference with business expectancy, Proctorio must allege:

(1) [t]he existence of a valid contractual relationship or business expectancy;
(2) knowledge of the relationship or expectancy on the part of the interferer;
(3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and
(4) resultant damage to the party whose relationship or expectancy has been disrupted.

*ThermoLife Int'l v. Gaspari Nutri., Inc.*, 871 F. Supp. 2d 905, 912 (D. Ariz. 2012) (internal quotation marks and citation omitted) (alterations in original).

Proctorio's pleadings exceed this standard. Proctorio has pled factual allegations that Mr. Johnson knew of Proctorio's relationships with many universities, repeatedly published false claims using infringing content, directly appealed to multiple universities to cancel contracts with Proctorio, and encouraged several universities that did so. FAC ¶¶ 19, 73-74, 119-123.[3] In so doing, Proctorio plausibly pleads that Mr. Johnson knew of Proctorio's business relationships and expectancies, and acted to undermine or destroy them in his bid to "abolish online proctoring," to Proctorio's financial detriment. Proctorio has adequately plead tortious interference, and Mr. Johnson's motion should be denied.

Proctorio alleges Mr. Johnson posted numerous false tweets disparaging Proctorio by name, and demanded that his university cut ties with Proctorio. ECF No. 1, Ex. 1 at 4; FAC, Exs. B-1 at 17, B-2 at 7, H. Specifically, he tweeted at Miami University, writing "Students everywhere have been sharing their concerns through tweets, petitions, and

---

[3] For instance, after the University of British Columbia voted to ban the use of Proctorio software, Mr. Johnson took to Twitter to celebrate the decision, and again urged Miami University and its Provost to follow suit. FAC, Ex. B-1 at 17 ("It's time for other institutions to do the same. I'm looking at you, Miami.").

CROWELL & MORING LLP
ATTORNEYS AT LAW

more," and continued, "[a]s a student at @miamiuniversity I think @[University President Greg Crawford] and the university needs to reconsider its adoption of the Proctorio spyware." ECF No. 1, Ex. 1 at 4. Mr. Johnson posted this tweet with full knowledge that Proctorio is not spyware specifically to demand that Miami University terminate its contract with Proctorio. He continues his efforts to undermine Proctorio's licensing agreement with Miami University by peddling knowing factually false claims of data insecurity as a member of the university's subcommittee investigating remote proctoring software.[4] As an end user of Proctorio, Mr. Johnson was obligated to comply with the licensing agreement entered into between Proctorio and Miami University. FAC ¶¶ 62-66.

Further, this Court's causation jurisprudence supports Proctorio's position, not Mr. Johnson's made-up "sole causation" standard. Arizona courts do not require a finding that tortious interference "to situations in which a defendant either initiates interferences or physically prevents a third party from performing its contractual obligations;" rather, Arizona courts hold that the "but for" causation standard is satisfied where "the defendant's wrongful or unlawful conduct proximately caused the injury alleged, *although it need not be the sole cause*." *S. Union Co. v. Sw. Gas Corp.*, 180 F. Supp. 2d 1021, 1055 (D. Ariz. 2002) (internal quotation marks and citation omitted) (emphasis added). Proctorio need only plead that but for Mr. Johnson's relentless crusade against it, the University of Illinois and others would not have banned remote proctoring or terminated their contracts. Proctorio has done so. FAC ¶¶ 73-74, 118-123.[5]

Discovery on this topic has already begun and will show the damage caused by Mr. Johnson's campaign. *See* Ramsey Decl., Ex. B (Subpoena to Miami University). At this

---

[4] Proctorio asks the Court to take judicial notice of a recent article published in Miami University's student publication, after Proctorio filed its First Amended Complaint. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (taking judicial notice of publications as indication of what information was in the public realm). *See* Madeline Phaby, *University Senate Committee Recommends Termination of Proctorio Contract*, Miami Student (Sept. 28, 2021), https://www.miami student.net/article/2021/09/usenate-0927?ct=content_open&cv=cbox_featured.

[5] Accordingly, applying the correct legal standard, Mr. Johnson's admission that there are "equally likely alternative reasons" that universities turned away from Proctorio (MTD at 11) fully invalidates his motion.

CROWELL & MORING LLP
ATTORNEYS AT LAW

stage of proceedings, however, nothing further is required. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[O]n a motion to dismiss [the court] 'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.'") (internal citation omitted). Proctorio is "not required to present evidence to support a claim—[it] need only allege factual matter showing that a claim is plausible on its face." *Ader v. SimonMed Imaging Inc*., 2018 WL 6418424, at *3 (D. Ariz. Dec. 6, 2018) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Separately, Mr. Johnson offers four arguments in its effort to undermine Proctorio's claim of tortious interference. Each of them fails. First, Proctorio clearly identified Mr. Johnson's co-tortfeasors Linkletter and Fight for the Future ("FFTF"). FAC ¶ 122. Proctorio does not possess every piece of evidence to show the full extent of Mr. Johnson's coordination with Linkletter and FFTF, nor could it. But, in its allegations, Proctorio has provided evidence of these actors exchanging communications containing false information about Proctorio's software. FAC, Ex. B-2 at 30. The full extent of their coordination is the subject of already-served discovery. *See* Ramsey Decl., Ex. C.

Second, Proctorio explicitly alleges that Mr. Johnson's tortious behavior undermined its business expectancies. FAC ¶¶ 19, 74-75, 123; *see also* MTD at 11 n.5 (asking the court to take judicial notice of *No More Proctorio*, Inside Higher Ed (Feb. 1, 2021)).[6] Mr. Johnson's argument to the contrary is without merit.

Third, Proctorio specifically alleges facts that it reasonably expected to win business with specific institutions.[7] Arizona law does not require evidence of the actual termination of an existing contract on a tortious interference claim. *Sidi Spaces LLC v.*

---

[6] *See No More Proctorio*, Inside Higher Ed (Feb 1, 2021), *available at* https://www.insidehighered.com/news/2021/02/01/u-illinois-says-goodbye-proctorio.

[7] *See* FAC ¶ 123 ("As a result of the false statements that Counterdefendant and his co-tortfeasors publicized over several months, certain educational institutions have narrowed, terminated, or refused to renew contracts with Proctorio."); *id.* ¶ 119 (naming as exemplars "universities like Miami University, the University of British Columbia, and the University of Illinois"—which have, as alleged, all either announced a termination, substantial narrowing, or consideration of termination of contracts); *id.* ¶¶ 73-75.

*Alum. Trailer Co.*, 2020 WL 6799262, at \*13 (D. Ariz. Oct. 22, 2020) ("It is not necessary for Plaintiff to prove that it was absolutely certain that a contract would have been formed absent Defendant's interference . . . .").[8] Nonetheless, Proctorio pleads *exactly that*.

Finally, Proctorio has put forth facts supporting its allegations that Mr. Johnson's false statements are a but-for cause of contract reviews and cancellations, proctoring bans, and loss of expected business. Indeed, the temporal sequence of events and proximity in time between the false statements and disruption of the contracts more than plausibly alleges causation. *See Vroom v. Johnson*, 2015 WL 3490086, at \*6 (D. Ariz. June 3, 2015) (finding allegations "linked by proximity in time" sufficient to establish causation); *see also Emeldi v. Univ. of Oregon*, 698 F.3d 715, 727 (9th Cir. 2012).

Mr. Johnson's cited caselaw to support his motion to dismiss Proctorio's tortious interference claim are all inapposite.[9] Unlike the plaintiffs in *Courser* and *VDARE*, Proctorio has not simply alleged conclusive legal standards, but has pled significant evidence of Mr. Johnson's campaign to nix Proctorio's relationships and to "abolish online proctoring." His reliance on *Megawatt Corp.* fares no better. *See Megawatt Corp. v. Tucson Elec. Power Co*., 1989 WL 95602, at \*8 (D. Ariz. May 26, 1989) (requiring evidence *on a motion for summary judgment* that the plaintiff "would have prevailed in the bidding . . . but for the interference by defendants."). At this stage, Proctorio's tortious interference allegations exceed the standard. Mr. Johnson's motion should fail.

---

[8] *See also ABCDW LLC v. Banning*, 388 P.3d 821, 831 (Ariz. Ct. App. 2016) ("To be liable for intentional interference with contract, it is not necessary that a defendant cause an actual breach of the contract between the plaintiff and a third party . . . . Rather, the tort may arise when a defendant causes a party's performance under the subject contract to be more expensive or burdensome.").

[9] *VDARE Found. v. City of Colo. Springs*, 2021 WL 3716401, at \*15-16 (10th Cir. Aug. 23, 2021) (dismissing plaintiff's claim for tortious interference where Plaintiff alleged Defendant had made performance of the contract "impossible" without alleging why performance had become impossible, or even why the contract had been cancelled); *Courser v. Michigan House of Representatives*, 831 F. App'x 161, 182 (6th Cir. 2020) (finding Plaintiff's recitation of the elements of tortious interference lacking in "any facts to move these allegations beyond speculation to plausibility.").

CROWELL & MORING LLP
ATTORNEYS AT LAW

**IV.    THE COURT SHOULD AWARD PROCTORIO ITS ATTORNEYS' FEES AND COSTS.**

At the outset of litigation, this Court delivered a clear order that motions to dismiss were to be "discouraged if the defect(s) in the complaint can be cured by a permissible amendment." ECF No. 6 at 1. When the parties conferred on September 1, 2021, they focused their discussion on *disputes over* factual allegations—not that there was a *deficiency* of allegations. *See* Ramsey Decl., ¶¶ 2-4. At this time, Proctorio's counsel emphasized that the parties' dispute was purely factual (**and Mr. Johnson's counsel agreed**), which made it inappropriate for a motion to dismiss—especially in light of the Court's order. *Id*. Proctorio's counsel memorialized the parties' discussion in an effort to conserve the Court's valuable resources. *Id*., Ex. A. Mr. Johnson's counsel, however, falsely denied the statements and persisted in filing a dilatory motion that they knew was unsupported by any of the relevant legal standards. *Id*. Accordingly, as Proctorio's counsel warned Mr. Johnson's counsel it would do,[10] Proctorio hereby requests that the Court award Proctorio its attorneys' fees and costs incurred as a result of opposing Mr. Johnson's fundamentally meritless motion. *See, e.g.*, 17 U.S.C. § 505; *see also Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007).

## <u>CONCLUSION</u>

For the reasons stated here, Proctorio respectfully requests that the Court deny Mr. Johnson's motion to dismiss in its entirety and award Proctorio the costs and attorneys' fees it incurred to respond to Mr. Johnson's motion.

---

[10] *Id*. ("In sum, to spare the parties the significant cost to brief – and more importantly, to conserve valuable judicial resources to decide – a motion to dismiss that will, at best, require the impermissible resolution of contested facts, we strongly urge Plaintiff to reconsider the filing of this meritless motion. If Plaintiff chooses to proceed anyway, Proctorio reserves all rights, including its right to seek any and all attorney's fees or other costs it is forced to incur to respond to this motion.").

1    Dated:  October 5, 2021                    **CROWELL & MORING LLP**

2

3                                               By: _____

4                                               Justin D. Kingsolver
                                                   JKingsolver@crowell.com
5                                               **CROWELL & MORING LLP**
                                                1001 Pennsylvania Avenue NW
6                                               Washington, D.C. 20004
                                                Telephone:  202-624-2500

7                                               Gabriel M. Ramsey*
                                                   GRamsey@crowell.com
8                                               Kristin Madigan*
                                                   KMadigan@crowell.com
9                                               Kayvan M Ghaffari*
                                                   KGhaffari@crowell.com
10                                              Jacob Canter*
                                                   JCanter@crowell.com
11                                              **CROWELL & MORING LLP**
                                                3 Embarcadero Center, 26th Floor
12                                              San Francisco, California 94111
                                                Telephone:  415-986-2800

13
                                                 *Admitted pro hac vice*
14
                                                *Attorneys for Defendant Proctorio, Inc.*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL & MORING LLP
ATTORNEYS AT LAW

1

## **CERTIFICATE OF SERVICE**

2

3

I hereby certify that on October 5, 2021, I caused the foregoing to be electronically

4

filed with the Clerk of the Court using the Court E-Filing system, which sends notification

of such filings to all registered participants.

5

6

7

By*:*   */s./ Justin D. Kingsolver*

8

Justin D. Kingsolver
*Attorney for Proctorio, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL & MORING LLP
ATTORNEYS AT LAW