Eric M. Fraser, 027241
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012
(602) 640-9000
efraser@omlaw.com

Cara Gagliano (*pro hac vice*)
Hannah Zhao (*pro hac vice*)
Andrew Crocker (*pro hac vice*)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, California 94109
(415) 436-9333
cara@eff.org
zhao@eff.org
andrew@eff.org

Attorneys for Plaintiff-Counterdefendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Erik Johnson, an individual,<br><br>                          Plaintiff,<br><br>vs.<br><br>Proctorio Inc., a Delaware corporation,<br><br>                          Defendant. | No. CV-21-00691-PHX-DLR<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS 3 AND 4 OF THE COUNTERCLAIMS**<br><br>**(Oral argument requested)** |
| Proctorio Inc., a Delaware corporation,<br><br>                          Counterclaimant,<br><br>vs.<br><br>Erik Johnson, an individual,<br><br>                          Counterdefendant. | |

# INTRODUCTION

In its opposition, Proctorio attempts to draw the Court's focus away from the legal defects in Counts 3 and 4 of its First Amended Counterclaims by dwelling on factual disputes irrelevant to the motion at hand. Johnson has demonstrated that he made fair use of Proctorio's material regardless of whether Proctorio is later able to introduce evidence that criticism he made in reliance on this material contains any provably false statements. Similarly, Proctorio speculates about discoverable evidence that might prove its claim of tortious interference, but it has failed to allege facts sufficient to sustain this claim at the pleading stage. Counts 3 and 4 should be dismissed.

# ARGUMENT

**I.  Johnson Is Entitled to a Finding of Fair Use As a Matter of Law.**

Ample case law supports determining fair use on the pleadings in this case. *See* Mot. (Dkt. 34) at 4; *see also, e.g.*, *Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*, 2009 WL 2157573, at *4 (N.D. Cal. July 17, 2009), *aff'd*, 422 F. App'x 651 (9th Cir. 2011); *Savage v. Council on Am.-Islamic Rels., Inc.*, 2008 WL 2951281, at *4 (N.D. Cal. July 25, 2008); *City of Inglewood v. Teixeira*, 2015 WL 5025839, at *12 (C.D. Cal. Aug. 20, 2015); *Marano v. Metro. Museum of Art*, 472 F. Supp. 3d 76, 82–83, 88 (S.D.N.Y. 2020), *aff'd*, 844 F. App'x 436 (2d Cir. 2021); *Lombardo v. Dr. Seuss Enters., L.P.,* 279 F. Supp. 3d 497, 504–05 (S.D.N.Y. 2017), *aff'd*, 729 F. App'x 131 (2d Cir. 2018); *Hughes v. Benjamin*, 437 F. Supp. 3d 382, 389, 394 (S.D.N.Y. 2020); *Denison v. Larkin*, 64 F. Supp. 3d 1127, 1135 (N.D. Ill. 2014).

Proctorio's attempt to distinguish the cases cited for this proposition in Johnson's Motion rests on a faulty premise: that the facts necessary for a fair use determination are in dispute. *See* Opp'n (Dkt. 38) at 4–5. Johnson's fair use argument does not depend on any dispute of *fact*—as opposed to characterizations or legal conclusions—being resolved in his favor. To the contrary, even when all well-pleaded facts are accepted as true and all reasonable inferences are drawn in Proctorio's favor, a finding of fair use remains inescapable. *See generally* Mot. at 4–9; Sections I.A–D, *infra*.

1

1    Proctorio nonetheless argues that the Court should follow "the overwhelming
2 weight of authority" in refusing to consider fair use on a Rule 12 motion, but not one of
3 the cases it cites supports doing so here. *See* Opp'n at 5. In *Delano*, basic, material facts—
4 such as what exactly was copied and how it appeared—were in dispute. *Delano v.*
5 *Rowland Network Commc'ns LLC*, 2020 WL 2308476, at *4 (D. Ariz. May 8, 2020).
6 Similarly, *Browne* explained that the complaint contained only limited factual allegations,
7 insufficient to conduct a thorough fair use analysis. *Browne v. McCain*, 612 F. Supp. 2d
8 1125, 1130–31 (C.D. Cal. 2009). Those factors are not present here: The Court has copies
9 of Johnson's uses properly before it, and the parties do not dispute what was copied,
10 where it appeared, and how it appeared. *See* FAC (Dkt. 31), Ex. B-3 at 28, 31–32; Compl.
11 (Dkt. 1), Exs. 2–5. In *ComicMix*, the court in fact *did* analyze fair use on a Rule 12 motion,
12 finding it appropriate to do so because the complaint raised the issue of fair use and the
13 undisputed contents of the relevant works were before the court—just as they are here.
14 *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 256 F. Supp. 3d 1099, 1104–05 (S.D. Cal.
15 2017). The other two cited cases provide no helpful guidance. *See Four Navy Seals v.*
16 *Assoc'd Press*, 413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005) (no reasoning provided);
17 *Sushi Nozawa, LLC v. HRB Experience, LLC*, 2020 WL 159379, at *4 (C.D. Cal. Mar.
18 31, 2020) (addressing fair use defense under trademark law, not copyright law). As
19 Johnson demonstrates in his Motion to Dismiss and Sections I.A–D below, the Court has
20 all the information it needs to determine that Johnson is entitled to a finding of fair use as
21 a matter of law.

22    **A.    The Purpose and Character of the Use Favor Johnson.**
23    A court evaluating fair use under Rule 12 need not accept the claimant's
24 characterizations of the use as true; it instead should look to the use itself. *See City of*
25 *Inglewood*, 2015 WL 5025839, at *9 (declining to credit allegations that use was not
26 transformative based on court's own review of the relevant works); *Adjmi v. DLT Entm't*
27 *Ltd.*, 97 F. Supp. 3d 512, 527 (S.D.N.Y. 2015) (basing fair use analysis under Rule 12(c)
28 on own "review of the raw materials, not the parties' proverbial labels"). "In copyright

infringement actions, 'the works themselves supersede and control contrary descriptions of them,' including 'any contrary allegations, conclusions or descriptions of the works contained in the pleadings.'" *Oyewole v. Ora*, 291 F. Supp. 3d 422, 431–32 (S.D.N.Y. 2018), *aff'd*, 776 F. App'x 42 (2d Cir. 2019). Whether Johnson used the Excerpts and Video Screenshots to support critique and commentary is not a disputed fact. It is a *conclusion* drawn from undisputed facts—the contents of Johnson's tweet thread and the linked code excerpts—and indeed the only reasonable conclusion that can be drawn. *See* FAC, Ex. B-3 at 28, 31–32; Compl., Exs. 2–5; *see also* Mot. at 5–6.

Proctorio argument that Johnson's purpose was to "raise his personal brand" and "destroy the market" for the Proctorio Software conflates the concepts of the purpose of the use—i.e., how the use is functioning—and the motive of the user. Opp'n at 5–6, 9. Only the former is relevant to the fair use analysis. *Savage*, 2008 WL 2951281, at *4–*6; *accord* William F. Patry, *Patry on Fair Use* § 3:1 (2021). In *Savage*, the court rejected an argument that the contested uses were "'not done for genuine criticism or comment,' but instead misrepresented plaintiff's views with the intention to raise funds for their own political purposes." 2008 WL 2951281, at *4–*5. But even taking the motive allegations as true, "it is the manner of use, not the motivation behind it, which must be analyzed: 'what use was made,' rather than 'who is the user.'" *Id.* at *5; *see also Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013) (finding transformativeness by comparing works despite defendant's testimony that he had no transformative goal); *Adjmi*, 97 F. Supp. 3d at 532 n.13 (evaluating transformativeness did not require intent evidence). Proctorio makes an argument almost identical to Savage's, and it should be rejected for the same reasons.

Johnson's use of the Excerpts to support his critical commentary is the epitome of transformative use. No reasonable factfinder could conclude that taking software code—the original purpose of which is to enable the operation of a computer program—and excerpting it to report and comment on its contents does not put it in a new context, with a new function, for a new purpose. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1164 (9th Cir. 2007).

3

As to the Video Screenshot, it is unclear whether the allegedly infringed work is the original video, the Proctorio Software, or the design of the Proctorio Software's user interface ("Proctorio UI"). *Compare* Answer (Dkt. 31) at 7, ¶ 20 *with* FAC at 37, ¶ 66 *and id.* at 24, ¶ 23. Regardless of the answer, Johnson's use of the Video Screenshot is transformative for essentially the same reasons: the image has been placed in a new context with a new purpose.

Against this high degree of transformativeness, Proctorio's allegations that Johnson used the Excerpts and Video Screenshot to make knowingly false statements about Proctorio and the Proctorio Software do not tilt this factor in its favor even if they are assumed to be true. Opp'n at 7–9. *Savage* rejected an argument essentially identical to Proctorio's on a motion to dismiss. 2008 WL 2951281, at *4–*6; *see also Hughes v. Benjamin*, 437 F. Supp. 3d 382, 392 n.5 (S.D.N.Y. 2020) (rejecting argument that critical work was not fair use because it misrepresented plaintiff). At a more general level, the Supreme Court has expressed strong skepticism that considerations of bad faith should have any bearing on fair use, which "is not a privilege reserved for the well-behaved." *Google LLC v. Oracle Am., Inc.* 141 S. Ct. 1183, 1204 (2021) (quoting Pierre N. Leval, *Toward a Fair Use Standard*, 103 Har. L. Rev. 1105, 1126 (1990), and citing *Campbell*, 510 U.S. at 585 n.18).

Finally, Proctorio's assertion that Johnson's use was commercial does not change the first-factor analysis. Proctorio's broad interpretation of commerciality would seem to apply to any use of a work by a security researcher to comment publicly on security-related issues. *See* Opp'n at 9. But even if the Court credits that argument, a finding of commerciality here would not outweigh the highly transformative nature of Johnson's use. While a finding that a use was *not* commercial will weigh in the defendant's favor, a finding that a use was commercial does not weigh equally strongly in the opposite direction. *Google*, 141 S. Ct. at 1204. This is especially true when a commercial use is highly transformative, in which case its commercial nature carries minimal weight. *Id.*; *City of Inglewood*, 2015 WL 5025839, at *8 (applying principle on motion to dismiss).

B.     **The Nature of the Copyrighted Works Favors Johnson.**

The inherent functional and informational aspects of software code require providing broader latitude for fair use as compared to more purely creative works. *See Google*, 141 S. Ct. at 1198; *Campbell*, at 586; *Sony Comput. Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 603 (9th Cir. 2000). Johnson does not argue that the code here is "just like" the code at issue in *Google*, nor does he need to. *Contra* Opp'n at 9. Rather, Johnson cites *Google* for its acknowledgment that (a) works of a factual or utilitarian nature receive relatively lesser copyright protection and (b) although some computer programs warrant more protection than others, computer programs as a class will "almost always serve functional purposes." 141 S. Ct. at 1198.

Proctorio admits that the relevant works serve functional purposes and provide information about how the Proctorio Software works. Opp'n at 10 (stating that code in Excerpts "carries out [certain] functionalities" and Video Screenshot "discloses highly relevant and important information about the technology"). And while Proctorio argues that the relevant code incorporates "numerous idiosyncratic choices in language, syntax, structure, sequence, and organization," Opp'n at 10, the same could be said about any textbook or news broadcast. Such works nonetheless receive lesser protection under this factor than purely fictional or artistic works. *Google*, 141 S. Ct. at 1198.

Even if the Court were to assume that the relevant works lay at the core of copyright, that would only make this factor neutral. Where the work is being used for a transformative purpose, a finding that the work is highly creative carries little weight. *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612–13 (2d Cir. 2006).

C.     **The Amount and Substantiality of the Portions Used Favor Johnson.**

Even if the Court assumes that the Excerpts and the Video Screenshot represent a quantitatively and qualitatively substantial portion of the relevant works (which the materials the Court may consider do not support), this factor still favors Johnson, because the amount used is proportionate to the use's purpose. *See Campbell*, 510 U.S. at 586; *Savage*, 2008 WL 2951281, at *8 (finding no need to resolve dispute over scope of

1  original work because portion used was reasonable in light of purpose); *City of
2  Inglewood*, 2015 WL 5025839, at *11 (same). This proportionality of Johnson's use is
3  plain on the face of the materials before the Court and not reasonably in dispute.

4      To illustrate this, Exhibit 1 to the accompanying Declaration of Cara Gagliano
5  pairs one of Johnson's tweets with the code linked within it. A cursory examination shows
6  that the linked Excerpt includes only code that identifies conditions under which the
7  Proctorio Software may terminate an exam attempt, which is precisely the subject matter
8  of the accompanying tweet. The Court need not, and should not, accept as true Proctorio's
9  insistence that the Excerpts have no relationship to Johnson's critical commentary, which
10 cannot be reconciled with the materials incorporated into the FAC. *See Daniels-Hall v.*
11 *Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010; *Oyewole*, 291 F. Supp. 3d at 431.

12     Johnson's use of the Video Screenshot is similarly reasonable, regardless of
13 whether the original work is alleged to be the tutorial video, the Proctorio Software, or
14 the Proctorio UI. In any case, the use consists of a single still image showing the software
15 functionality described in the accompanying tweet. FAC, Ex. B-3 at 31. Whether the
16 Video Screenshot "discloses the core functional purpose" of the Proctorio Software is
17 immaterial. *See* Opp'n at 11. Proctorio relies on *Google* to argue otherwise, but that
18 decision instead undercuts the argument. *Google* explains that the third factor may weigh
19 against a fair use determination if the defendant has taken the "'heart' of the original
20 work's *creative expression*." 141 S. Ct. at 1205 (emphasis added). The work's creative
21 expression by definition does not encompass ideas or functional aspects of the work,
22 which are not protectable under the Copyright Act. 17 U.S.C. § 102(b). The Court went
23 on to conclude that the third factor favored a finding of fair use because Google had not
24 used the copied lines of code for their "creativity" or "beauty" but for their relevance to
25 Google's transformative purpose. 141 S. Ct. at 1205. Because the materials before the
26 Court demonstrate the same is true here, this factor should be weighed in Johnson's favor.

27     **D.**    **The Market Effect of the Use Favors Johnson.**
28     It is clear from the materials before this Court that no amount of discovery will

reveal cognizable market harm to Proctorio from Johnson's use of the Excerpts and Video Screenshot. Proctorio does not dispute that Johnson's uses cannot serve as a market substitute for its works, nor does it dispute that no licensing market exists for uses like Johnson's. *See* Mot. at 8–9. Instead, the parties' dispute is over whether the alleged harms are cognizable under the Copyright Act, a question of law. *Compare id. with* Opp'n at 11–13. Proctorio's argument that they are misinterprets and misapplies the cases it cites.

As the Supreme Court explained in *Google*, "a potential loss of revenue is not the whole story." 141 S. Ct. at 1206. Proper consideration of this factor must consider not only *whether* the challenged use will have financial consequences but also *why*. *Id.* The case law distinguishes between uses that supplant demand (cognizable) and uses that suppress demand (not cognizable). *E.g.*, *Fisher v. Dees*, 794 F.2d 432, 437–38 (9th Cir. 1986); *Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 780 F. Supp. 1283, 1294–95 (N.D. Cal. 1991), *aff'd*, 964 F.2d 965 (9th Cir. 1992). The distinction between the two reflects whether the harm flows from the copying of protectable expression or from other aspects of the use, respectively. *Fisher*, 794 F.2d at 438. Harms in the latter category include the types of injuries that Proctorio alleges, which stem from the substance of Johnson's uses rather than exploitation of the works' expressive elements. Indeed, Proctorio did not dispute that its theory of harm does not depend on any reproduction of copyrightable expression from its works. *See* Mot. at 9.

Demand-suppression harms are categorically not cognizable under the Copyright Act and not relevant to the fair use analysis, even if they completely destroy the market for the original work and even if that was the user's intended purpose. *Fisher*, 794 F.2d at 437–38; *Campbell*, 510 U.S. at 591–92; *see also Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform*, 868 F. Supp. 2d 962, 982 (C.D. Cal. 2012) (allegations that defendant's uses had "diminished the value" of work and "terminated all conversations with potential licensees" were not cognizable under Copyright Act). The contradictory conclusion reached in one case Proctorio cites is not persuasive. *See* Opp'n at 12 (citing *Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 2021 WL 3271829,

at *6 (S.D.N.Y. July 30, 2021)). That decision correctly articulated the supplant vs. suppress rule but did not correctly apply it. *Id.* The court did not explain its decision to nonetheless treat reputational harm from association with the use as cognizable, nor did it cite to any supportive case law. *Id.* Moreover, that case is distinguishable because the challenged use was not transformative and did not comment on the work itself. *Id.* at *5.

Finally, Proctorio's contention that this factor cannot be evaluated without introducing evidence about the relevant markets is incorrect. In *Penguin*, the use was non-transformative and presented a likelihood of harm from market substitution. *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997). Here, there is no allegation of market substitution. Because the only theories of harm alleged are not legally cognizable, they can be rejected on the pleadings as a matter of law.

## II.     Proctorio Did Not State a Claim of Tortious Interference.

Proctorio's defense of its tortious interference claim does little more than restate the insufficient allegations from the FAC and note that discovery might bear out some of its allegations. Opp'n at 16–17. However, the potential existence of discoverable evidence cannot cure an insufficient pleading. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). Although Proctorio does not need to present specific evidence, it is required to plausibly plead facts that meet every element of each of those claims. It has failed to do so.

Johnson does not insist on a "sole causation" standard; it is the "but-for" standard for causation that Proctorio has failed to meet. *Compare* Opp'n at 16 *with* Mot. at 10. Proctorio's allegations, assessed in light of "judicial experience and common sense," do not support a reasonable inference that any contracts or business expectancies were even affected by Johnson's statements, much less that they would not have been terminated (or would have been realized) but for those statements. *Iqbal*, 556 U.S. at 679.

Indeed, Proctorio's own statements undercut the plausibility of its claim. Proctorio acknowledged that its software is imperfect, that there has been "increased scrutiny" on

Proctorio and remote proctoring software since the onset of the Covid-19 pandemic, and that Johnson is but one of many detractors of that technology and industry. FAC at 18–19, ¶¶ 6–7. In light of the volume of criticism and number of critics against Proctorio, its allegations "do not permit the court to infer more than the mere possibility" of but-for causation. *Iqbal*, 556 U.S. at 679.

Proctorio's theory that causation could be sufficiently pled by the sequence of events does not rescue its claim; "timing alone will not show causation in all cases." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). Tellingly, Proctorio relies on cases that intentionally construe causation broadly as a matter of policy: both dealt with retaliatory conduct in federal discrimination claims. *See Vroom v. Johnson*, 2015 WL 3490086 (D. Ariz. June 3, 2015); *Emeldi v. Univ. of Oregon*, 698 F.3d 715 (9th Cir. 2012). "At the prima facie stage of a retaliation case, the causal link element is construed broadly" and is met simply by demonstrating that the two events "are not completely unrelated." *Emeldi*, 698 F.3d at 726 (internal quotes omitted). By contrast, causation in tortious interference claims under Arizona law is much more stringent and must meet the but-for test. *See S. Union Co. v. Sw. Gas Corp.*, 180 F. Supp. 2d 1021, 1055 (D. Ariz. 2002).

Moreover, Proctorio's timing theory argument is again belied by its own admissions. Proctorio does not quarrel with numerous critical statements Johnson has made, sometimes on the same day—and in many instances, within the same tweet thread—as his allegedly tortious statements. *See* FAC at 31–34, ¶¶ 56–59 & Ex. B-3 at 29–32. Assuming arguendo that *anything* Johnson said caused these institutions to cease or limit their business with Proctorio, these other critiques are equally, if not more, likely to have done so than the few statements to which Proctorio objects. *See VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1174–1175 (10th Cir. 2021) (noting presence of alternative possible causes in concluding causation was not plausibly pled).

Nor has Proctorio plausibly pled "factual content that allows the court to draw the reasonable inference" that Johnson acted in concert with Ian Linkletter. *Iqbal*, 556 U.S.

at 677–78. Proctorio's assertion that the alleged interference was due to "false statements that Counterdefendant and his co-tortfeasors publicized" is not enough to support an inference that *Johnson* was responsible for any allegedly interfering statements. FAC at 47, ¶ 123. Proctorio claims that Johnson is in "close and active contact" with Linkletter, but all it offers in support of this conclusion is that Johnson has retweeted Linkletter's public tweets. *Id.* at 30, n.20. On that theory, every person who retweeted Linkletter's public statements is also a joint tortfeasor. Without more, Proctorio's claims that Johnson is responsible for Linkletter's statements are "no more than conclusions" and not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679.

Proctorio's theory of knowledge is equally specious. It must allege enough factual support to allow the Court to reasonably infer that Johnson had knowledge of any contract or business expectation that "constituted more than mere hope." *Sidi Spaces LLC v. Aluminum Trailer Co.*, 2020 WL 6799262, at *12 (D. Ariz. Oct. 22, 2020). Instead, Proctorio merely cites to tweets wherein Johnson applauds various institutions' decision to terminate their relationship with Proctorio as the basis for alleging that Johnson had knowledge of those contractual relationships. FAC at 22, ¶19. But those tweets came *after* the relationships had been terminated and do not support an inference that, as required by law, Johnson had knowledge and intent at the time he allegedly committed the interfering act. *See Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bur. of Maricopa Cty., Inc.*, 130 Ariz. 523, 530 (1981) (tortious interference "requires specific intent" and tortfeasor must have knowledge and intent when interfering act is committed). The only contract regarding which Proctorio may have plausibly pled such knowledge is a contract that remains in effect and has not changed since Johnson's allegedly interfering conduct—the one with Johnson's own university, Miami University of Ohio. Thus, Proctorio has failed to identify any contract or business expectancy (1) of which Johnson was aware; and (2) that was terminated or breached due to Johnson's allegedly false statements. At best, Proctorio's allegations are "merely consistent" with a claim of liability for tortious

interference—and that is not enough to cross "the line between possibility and plausibility" *Iqbal*, 556 U.S. at 678.

### III. Proctorio Is Not Entitled to Fees.

Proctorio argues that it is entitled to attorneys' fees and costs based on the Court's Order discouraging Rule 12(b)(6) motions if the defect(s) on which the motion is based "can be cured by a permissible amendment." Dkt. 6, ¶1; Opp'n at 19. Proctorio has not demonstrated any violation of that Order. Proctorio had an opportunity to address the defects Johnson identified through amendment, but it chose not to. Proctorio does not contend that Johnson's counsel failed to identify the legal bases for his motion to dismiss in the parties' telephonic conference. Because Johnson properly conferred with Proctorio, the analysis should end here.

Instead, Proctorio focuses on the fact that Johnson's counsel acknowledged the existence of factual disputes during the pre-motion conference. Johnson's counsel did not state that Johnson's Rule 12 motion would be based on those disputes, which it is not. Gagliano Decl. ¶ 2. To the contrary, Johnson's counsel explained in detail the legal bases for the motion. *Id.* Moreover, the Court's Order is not about whether the parties dispute facts; it is about whether a motion to dismiss can be avoided by an amended pleading. In any case, the Court should judge the motion to dismiss by the arguments it makes, not based on a disputed characterization of a telephone call between counsel.

Finally, Proctorio does not cite a valid legal basis for awarding fees at this stage. Even if the Court denies the motion to dismiss, Proctorio will be ineligible for relief under § 505 because there will be no material alteration of the legal relationship between the parties. *See Shapiro ex rel. Shapiro v. Paradise Valley Unif. Sch. Dist. No. 69,* 374 F.3d 857, 865 (9th Cir. 2004) (prevailing party is one that "achieve[s] some material alteration of the legal relationship of the parties").

### CONCLUSION

Johnson requests that the Court dismiss Counts 3 and 4.

DATED this 15th day of October, 2021.

OSBORN MALEDON, P.A.


By  s/ Eric M. Fraser
    Eric M. Fraser
    2929 North Central Avenue, Ste. 2100
    Phoenix, Arizona  85012-2793

ELECTRONIC FRONTIER FOUNDATION
Cara Gagliano (*pro hac vice*)
Hannah Zhao (*pro hac vice*)
Andrew Crocker (*pro hac vice*)
815 Eddy Street
San Francisco, California 94109

Attorneys for Plaintiff-Counterdefendant